# IN THE SUPREME COURT OF IOWA

No. 14–2075

Filed June 17, 2016

**STATE OF IOWA,**

Appellee,

vs.

**DEYAWNA LEANETT TAYLOR,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Story County, Stephen P. Van Marel, District Associate Judge.

A defendant in a criminal case seeks further review after the court of appeals affirmed her convictions, arguing that the district court erred in rejecting her claim of a speedy trial violation. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

Mark C. Smith, State Appellate Defender, Joseph A. Fraioli, Assistant Appellate Defender (until withdrawal), then Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Alexandra Link, Assistant Attorney General (until withdrawal), Stephen H. Holmes, County Attorney, and Shean Fletchall, Assistant County Attorney, for appellee.

**APPEL, Justice.**

In this case, we consider whether the State failed to prove waiver or good cause to avoid a speedy trial violation. Deyawna Taylor moved for dismissal of the charges against her on speedy trial grounds a few days prior to her scheduled trial. The State resisted, claiming Taylor impliedly waived her right to speedy trial by agreeing to a proffer agreement after the speedy trial deadline had passed. In the alternative, the State argued the assertion of speedy trial rights two days before the scheduled trial was untimely. The State further argued it had good cause for the delay because the defendant was incarcerated in Iowa and did not appear for her arraignment.

The district court denied Taylor's motion to dismiss on speedy trial grounds. Taylor was subsequently convicted of the pending charges. The court of appeals upheld the conviction, and we granted further review. For the reasons expressed below, we reverse and remand to the district court for dismissal of the case.

## I. Procedural and Factual Background.

On July 28, 2014, the State charged Deyawna Taylor with one count of driving while barred in violation of Iowa Code section 321.561 (2013) and one count of prostitution in violation of Iowa Code section 725.1. Arraignment was scheduled for August 11. Taylor failed to personally appear for arraignment because she was incarcerated in Polk County on unrelated charges. The district court then issued an order for a warrant.

On October 29 the State moved to have Taylor transported from the Mitchellville correctional facility to Story County for arraignment on the charges involved in this case. Taylor was not arraigned, however, until November 12. Trial was set for December 16. The State asserts

that it entered into a proffer agreement with Taylor on November 12. Under the proffer agreement, the charges against Taylor would be reduced if Taylor agreed to cooperate in the prosecution of another defendant.

On December 8, Taylor filed a motion to dismiss. Taylor asserted that the State failed to try Taylor's case within ninety days of filing the trial information. The district court held a hearing on December 10. The district court opened the hearing by stating that it was the burden of the State to show good cause why the defendant was not brought to trial within ninety days of the filing of the trial information.

The State began the hearing with a professional statement by counsel that it was not until it filed a motion to transport Taylor from Mitchellville—on October 29—that the State realized the defendant was, in fact, incarcerated at Mitchellville. The State then called Assistant Story County Attorney Tiffany Meredith as a witness. She testified there were conversations with defense counsel on November 12 "to complete the proffer agreement." Although the discussion was conducted in the presence of a court reporter and Meredith reviewed the transcript prior to the hearing, the transcript of the proffer discussions was not introduced at the hearing. According to Meredith, the conversation revolved around a couple of different items, with the majority of the discussion focusing on the length of time it would take for the trial to begin in which Taylor was to testify. Meredith testified that she was not the prosecutor in the case and therefore,

> I didn't know if speedy trial had not been waived. So[, in discussing the length of time until Taylor was to testify,] I didn't specifically use the word "speedy trial", but I did point out that it was going to take a number of months for [the other trial] to proceed . . . .

Taylor did not present evidence at the hearing. Defense counsel did, however, refer to a letter filed with the court dated September 30, 2014, indicating that Polk County had advised the Story County Sheriff's Office of Taylor's arrest in Polk County and asked the court to take judicial notice of the Polk County filings in the cases against Taylor.

In arguing against dismissal, the State argued that whether good cause for delay exists depends exclusively on the reason for the delay. The State maintained, however, that courts will consider a weaker reason for delay to be sufficient depending on the resolution of a multifactored test including the shortness of the period of the delay, the failure of the defendant to demand speedy trial, and the absence of prejudice. Here, the State argued, the good cause for the delay was Taylor's incarceration in another county and her assent to a delay in the form of making the proffer agreement with the State.

The court questioned the State about its good cause argument. The district court stated it was the court's understanding that when Polk County arrests someone against whom there is an outstanding warrant elsewhere, Polk County sends a teletype to the other county regarding the arrest. The State responded that while "[i]t's possible that the sheriff's office received [the teletype], our office [the county attorney's office] did not." The district court responded that the State should be careful with the argument, because "if the sheriff's office knew, the State knew."

The State continued its argument, noting

[t]he defense counsel was contacted even prior to being brought here and an offer to testify against [the other defendant] was presented, and that, I think, suggests that the defendant could have had the opportunity to waive speedy trial or demand speedy trial.

As a result, the State argued that Taylor "acquiesced to this proffer agreement."

At the close of the hearing, the court ruled on the motion to dismiss. The court stated that even though the speedy trial deadline may have "technically ran," Taylor acquiesced to that waiver of speedy trial when she signed the proffer agreement on November 12. The court noted that there was a great deal of discussion about the delay that would result from the proffer agreement and that the court was not going to second-guess counsel. The district court ruled that Taylor "waived speedy trial on November 12 of 2014, and acquiesced to going past the speedy trial date before that by signing the proffer."

Taylor then waived her right to a trial by jury and a trial on the minutes was held later that day. The court found Taylor guilty of driving while barred and prostitution. The court sentenced Taylor to two years imprisonment on each count, to be served concurrently, and a fine of $625 per count with costs.

Taylor appealed and we transferred the case to the court of appeals. The court of appeals affirmed Taylor's convictions. She applied for further review, which we granted. She asserts the State failed to bring her to trial within the speedy trial deadline. She argues that she did not waive her speedy trial rights, that there was not good cause for the delay, and that her assertion of her speedy trial rights was timely.

## II. Standard of Review.

We review a district court's ruling on a motion to dismiss on speedy trial grounds for abuse of discretion. *State v. Winters*, 690 N.W.2d 903, 907 (Iowa 2005). "When speedy trial grounds are at issue, however, the discretion given to the district court narrows." *Id.* Statutes and rules implementing the right to a speedy trial receive "a liberal

construction, designed to effectuate [their] purpose" of protecting citizens' liberty.  21A Am. Jur. 2d *Criminal Law* § 930, at 187 (2016); *accord Winters*, 690 N.W.2d at 907–08.

### III.  Discussion.

**A.  Legal Framework for Speedy Trial.**  Article I, section 10 of the Iowa Constitution guarantees the right to a speedy trial.  This constitutional command is implemented by Iowa Rule of Criminal Procedure 2.33(2) (2013).  *See Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012).  This rule provides in relevant part:

> *Speedy Trial.*  It is the public policy of the state of Iowa that criminal prosecutions be concluded at the earliest possible time consistent with a fair trial to both parties.  Applications for dismissals under this rule may be made by the prosecuting attorney or the defendant or by the court on its own motion.
>
>        . . . .
>
>    *b.*  If a defendant indicted for a public offense has not waived the defendant's right to a speedy trial the defendant must be brought to trial within 90 days after indictment is found or the court must order the indictment to be dismissed unless good cause to the contrary be shown.

Iowa R. Crim. P. 2.33(2).

We have held that under the rule, a criminal charge must be dismissed if trial is not commenced within ninety days of the charging instrument "unless the State proves (1) defendant's waiver of speedy trial, (2) delay attributable to the defendant, or (3) 'good cause' for the delay."  *Winters*, 690 N.W.2d at 908 (quoting *State v. Nelson*, 600 N.W.2d 598, 600 (Iowa 1999)).  The burden of showing an exception to the speedy trial deadline "rests squarely with the State."  *State v. Miller*, 637 N.W.2d 201, 204 (Iowa 2001).  The state at all times carries its burden—there is no requirement that the defendant show prejudice as a result of

the delay. *Ennenga*, 812 N.W.2d at 705; *State v. Sassman*, 226 N.W.2d 808, 809 (Iowa 1975).

We require diligence from those seeking to prove good cause. *Cf. State v. Campbell*, 714 N.W.2d 622, 628–29 (Iowa 2006) (finding good cause when the state showed the multiple actions of the defendant that resulted in the delay of trial); *Winters*, 690 N.W.2d at 909–10 (finding no showing of good cause despite the state presenting evidence of defendant's pro se pretrial motions, discovery requests, and a joint trial with a codefendant because there was no evidence why these normal events caused the delay). Even when the state does not intentionally cause the delay, inaction in pursuing a defendant weighs against a finding of good cause. *See United States v. Jenkins*, 701 F.2d 850, 853–54, 856–58 (10th Cir. 1983), *overruled on other grounds by Batson v. Kentucky*, 476 U.S. 79, 93 & n.16, 106 S. Ct. 1712, 1720–21 & n.16, 90 L. Ed. 2d 69, 84–85 & n.16 (1986); *see also State v. Lybarger*, 263 N.W.2d 545, 547–48 (Iowa 1978), *superseded by rule*, 1976 Iowa Acts ch. 1245, ch. 2, § 1301 (changing speedy trial period from sixty to ninety days), *as recognized in State v. Zaehringer*, 306 N.W.2d 792, 794–95 (Iowa 1981). Similarly, the state must show diligence in apprehending a defendant who is out of the jurisdiction. *See Jenkins*, 701 F.2d at 853–54, 856–57; *United States v. Salzmann*, 548 F.2d 395, 403–04 (2d Cir. 1976) (Feinberg, J., concurring).

The required showing of good cause under rule 2.33(2) is more stringent than its constitutional counterpart. *Miller*, 637 N.W.2d at 204. We have repeatedly rejected the multifactor balancing test of *Barker v. Wingo*, 407 U.S. 514, 530–32, 92 S. Ct. 2182, 2192–93, 33 L. Ed. 2d 101, 117–18 (1972), which considers length of delay, reason for delay, demand, and prejudice. *See, e.g., Miller*, 637 N.W.2d at 204; *Nelson*, 600

N.W.2d at 600; *State v. Olsen*, 528 N.W.2d 651, 654 (Iowa 1995); *State v. Petersen*, 288 N.W.2d 332, 335 (Iowa 1988). The good-cause test under our speedy trial rules relies only on one factor: the reason for the delay. *Miller*, 637 N.W.2d at 205; *Petersen*, 288 N.W.2d at 335. "[I]f the reason for the delay is insufficient, other factors will not avoid dismissal." *Ennenga*, 812 N.W.2d at 706; *accord State v. O'Bryan*, 522 N.W.2d 103, 106 (Iowa Ct. App. 1994).

Our precedents also disfavor using generalities in establishing good cause. For instance, generalized clerical difficulties are not sufficient. *Sassman*, 226 N.W.2d at 809. Further, general statements about court congestion are insufficient. *State v. Bond*, 340 N.W.2d 276, 279 (Iowa 1983). In evaluating good cause for court congestion, we have required a showing of specific circumstances arising out of unique, nonrecurring events which create a particular scheduling problem. *Id.* at 279–80. The state's bare assertion that it needed more time to prepare for trial is not sufficient to support a finding of good cause. *Winters*, 690 N.W.2d at 909. Under our cases, good cause to avoid speedy trial must be rooted in facts, not conclusions.

Further, we have emphasized that mere acquiescence in setting a trial date is not sufficient to lead to a waiver of speedy trial rights. *Zaehringer*, 306 N.W.2d at 795. The failure of an accused affirmatively to "assert . . . speedy trial rights does not amount to a waiver of those rights." *Ennenga*, 812 N.W.2d at 701; *accord State v. Gorham*, 206 N.W.2d 908, 912 (Iowa 1973).

We have held, however, that acquiescence may be a factor in determining waiver. *See Zaehringer*, 306 N.W.2d at 795. In *Zaehringer*, we found waiver when the defendant not only failed to assert speedy trial rights but actively engaged in extensive use of the entire schedule set by

the court, including numerous motions filed after the expiration of the speedy trial deadline. *Id.* at 795–96. We concluded that under the circumstances, the defendant "actively participated in the events which delayed his retrial but later sought to take advantage of that delay to terminate the prosecution." *Id.* at 796.

Instead, we have emphasized that in order to show waiver, the state must satisfy the demanding test of *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461, 1466 (1938). *See Gorham*, 206 N.W.2d at 911. In order to show waiver, there must be a showing of "an intentional relinquishment or abandonment of a known right or privilege." *Id.* (quoting *Zerbst*, 304 U.S. at 464, 58 S. Ct. at 1023, 82 L. Ed. at 1466).

Dismissal of charges on speedy trial grounds is an "absolute dismissal"—a discharge with prejudice—if at least one of the exceptions has not been established. *Ennenga*, 812 N.W.2d at 701 (quoting *State v. Abrahamson*, 746 N.W.2d 270, 273 (Iowa 2008); *see Miller*, 637 N.W.2d at 206. Whether the delay is great or small, dismissal under our rule is required unless the state carries its burden to show that the defendant waived speedy trial, that the delay was attributable to the defendant, or other "good cause" exists for the delay. *Miller*, 637 N.W.2d at 205–06.

**B. Did the State Meet Its Burden in Showing Good Cause for the Delay?** We first consider whether the State met its burden in showing good cause for the delay. The argument presented to the district court was that Taylor did not appear for her arraignment because she had been arrested by the State on other charges and incarcerated in Polk County. The State further asserts that it did not know of her presence in the Mitchellville correctional facility until October 29, two days after the expiration of the speedy trial deadline on October 27.

The State, however, offered no evidence to support its position other than the fact that it was not aware that Taylor was in state custody on other charges until after the speedy trial deadline had passed. There was no evidence to indicate whether the State diligently sought to locate Taylor. The State conceded it was possible that Polk County contacted the Story County sheriff when it arrested Taylor and found there was an outstanding warrant in Story County, but the State asserted that the sheriff is not the office of the county attorney.

The question of whether incarceration in the same state is good cause to avoid speedy trial deadlines is not a new question. The cases have been collected in an American Law Reports annotation. *See* R.P.D., Annotation, *Constitutional or Statutory Right of Accused to Speedy Trial as Affected by His Incarceration for Another Offense*, 118 A.L.R. 1037 (originally published 1939), Westlaw. As set forth by the annotation,

> The general rule, followed in the majority of the states and in the Federal courts, is that, under a constitutional provision guaranteeing to accused a speedy trial, and under statutes supplementing the constitutional provision and enacted for the purpose of rendering it effective, and prescribing the time within which accused must be brought to trial after indictment, a sovereign may not deny an accused person a speedy trial even though he is incarcerated in one of that sovereign's penal institutions under a prior conviction and sentence in a court of that sovereign.

*Id.* When in the custody of the state, the state and not the defendant has the power and authority over the defendant to bring the defendant to court.

Clearly, in this case, the State did not meet its burden of showing good cause for the delay. The State did not present any evidence to show due diligence in attempting to locate Taylor and it could not deny that Polk County contacted the Story County sheriff upon Taylor's arrest in Polk County in light of the outstanding Story County warrant. The State

simply claims a generalized and even implausible communication problem. *See, e.g., Winters*, 690 N.W.2d at 909 (finding ordinary pretrial motions not good cause for delay); *Bond*, 340 N.W.2d at 279 (rejecting generalized "court congestion" as good cause for delay); *Sassman*, 226 N.W.2d at 809 (holding an "administrative breakdown"—a shortage of secretarial help—was not good cause for delay). On this record, the State failed to meet its burden in showing good cause arising from Taylor's incarceration in Polk County.

**C. Did the State Meet Its Burden in Showing that Taylor Waived Her Right to a Speedy Trial?**

1. *Implied waiver through plea bargain.* We begin by recognizing that in the speedy trial context, we have repeatedly adopted the *Zerbst* test for waiver. *See Gorham*, 206 N.W.2d at 911. That is, in order to waive speedy trial rights, the defendant must do so knowingly and intelligently. *Id.* The standard for a showing of waiver is high. *Id.*; *accord Zerbst*, 304 U.S. at 464, 58 S. Ct. at 1023, 82 L. Ed. at 1466.

That said, a criminal defendant may waive the right to a speedy trial if the required showing is made. A plea bargain may provide a basis for waiver of the speedy trial right. *State v. Utter*, 803 N.W.2d 647, 654–55 (Iowa 2011). Further, intensive use of the extended schedule for purposes of trial preparation may suggest a waiver of speedy trial rights. *Zaehringer*, 306 N.W.2d at 795–96.

Here, however, the State offered no evidence to meet its burden of demonstrating waiver through the proffer agreement in this case. There is authority for the proposition that the government assumes the risk of dismissal due to delay when it enters into a plea bargain in which testimony in another case is part of the consideration. *United States v. Roberts*, 515 F.2d 642, 647 (2d Cir. 1975) (holding government may seek

faithful performance of agreement to cooperate, but "should do so mindful of the risks which it . . . assumes of dismissed indictments for unconstitutional delay").

We have, nonetheless, recognized that in some circumstances negotiations toward obtaining a guilty plea may constitute good cause when negotiations were underway *prior* to speedy trial expiring and concluding after speedy trial expired. *State v. La Mar*, 224 N.W.2d 252, 254 (Iowa 1974). In *La Mar*, the plea negotiations extended over more than a two-week period, with the state under the impression there would be a guilty plea. *Id.* at 253. As a result, and in reliance on the presumed success of the negotiations, the case was not set for trial. *Id.*

Here, however, there was no such reliance. The State offered no evidence there were negotiations prior to the expiration of the speedy trial deadline on October 27. Indeed, the evidence the State did offer suggests that the negotiation occurred after the speedy trial deadline had elapsed. There is no evidence in the record to suggest that the time required to conduct negotiations in this case on November 12 caused the setting of a trial date in violation of speedy trial requirements. The requirements had already been breached.

It might be possible to support a waiver argument on charges barred by speedy trial if the proffer agreement provided a benefit to Taylor on other timely charges that might be pending. *Utter*, 803 N.W.2d at 655. But the State offered no such evidence. The evidence offered by the State suggested that the only charges reduced were those for which the speedy trial deadline had already, in the district court's words, "technically ran." Further, the State offered no evidence that it and the defendant discussed waiver of the speedy trial deadline on the pending charges in this case as a term or condition of the proffer agreement.

Indeed, the State emphasized that the county attorney negotiating the proffer agreement did not know the speedy trial status of the case. The State offered no evidence that there was any communication between the defendant, the defendant's attorney, or the State prior to the passing of the speedy trial deadline on October 27. Clearly, the State failed to show the defendant knowingly and intelligently waived speedy trial rights as part of the alleged proffer agreement in this case.

What the State really argues is not waiver, but mere acquiescence. The State suggests that by not objecting earlier, Taylor acquiesced in a later trial date. The district court also found acquiescence. But our caselaw rejects mere acquiescence as a basis for waiver of speedy trial rights. *Zaehringer*, 306 N.W.2d at 796.

2. *Timeliness.* The State has not shown waiver because of untimely assertion of speedy trial. We have held that a defendant may waive his right to a speedy trial if the issue is raised *after a verdict is returned* unless the defendant is not represented by counsel and not admitted to bail during the course of the proceedings. *State v. Paulsen*, 265 N.W.2d 581, 585 (Iowa 1978). We have never found waiver, however, in a pretrial context solely upon the timing of the filing of a motion to dismiss on speedy trial grounds.

**D. Ineffective Assistance.** In the alternative, Taylor claims her counsel was ineffective for failing to insist on enforcement of the speedy trial deadline and allowing her to enter into a proffer agreement with the State. *See Utter*, 803 N.W.2d at 653. We need not reach this question in light of our holding in this case.

**IV. Conclusion.**

For the above reasons, the decision of the court of appeals is vacated, the decision of the district court is reversed, and the case remanded to the district court for dismissal of all charges.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

All justices concur except Mansfield and Waterman, JJ., who dissent.

**MANSFIELD, Justice (dissenting).**

I would affirm.  I agree with the district court and the court of appeals that Taylor waived her right to a speedy trial under Iowa Rule of Criminal Procedure 2.33(2)(*b*) (2013).  The majority's treatment of this issue suffers from two flaws.  First, it ignores relevant facts—specifically, the facts that the district court and court of appeals relied on in finding waiver.  Second, it is conceptually unsound because it confuses the legal issue of whether Taylor's counsel may have been ineffective with the legal issue of whether Taylor waived speedy trial.  Accordingly, I respectfully dissent.

The court's approach to the *facts* of this case is, in my view, unfair to the trial court and the State.  However, it will have no repercussions beyond this case.  The *legal* problems with this decision may be more lasting.  By holding, in effect, that a defendant's counseled waiver of a right is not enforceable as knowing and voluntary unless the State shows that the waiver was in the defendant's best interests, this court creates a new and unneeded complication in criminal procedure.

**I. The District Court Correctly Found that Taylor's Signed Proffer Agreement Amounted to a Waiver of Speedy Trial.**

The dispositive question on appeal is whether the signed agreement between Taylor and the State amounted to a waiver of speedy trial.  When that agreement was entered into on November 12, 2014, the State was also pursuing criminal charges against the foreign student who had allegedly paid Taylor for sex.  The agreement served several purposes.  First, it enabled Taylor to reduce her pending charges to simple misdemeanors.  Second, it required Taylor's cooperation in the case against the other defendant.  Third, the agreement made clear that

no disposition of Taylor's case could occur for a few months because, among other things, an interpreter would need to be arranged for the other defendant's trial.

Unfortunately, the State did not make the actual agreement part of the record. However, at the December 10 motion to dismiss hearing, the State did introduce testimonial evidence as to what the agreement said. Thus, we still know the agreement's essentials.

At the hearing, a prosecutor testified that on November 12, she met with Taylor and Taylor's counsel in the presence of a court reporter to complete a proffer agreement. She explained that a transcript of the verbal discussions was prepared. The prosecutor referred to and quoted from that transcript in her testimony. She also testified that the transcript was signed by both parties to memorialize the actual agreement.

The prosecutor further testified that the agreement required the other defendant's trial to proceed first with Taylor testifying for the State. Taylor's case would remain pending, and after the completion of the other defendant's trial, Taylor would be permitted to plead guilty to two simple misdemeanors in lieu of the pending more serious charges. The prosecutor added,

> I didn't specifically use the word 'speedy trial,' but I did point out that it was going to take a number of months for [the other defendant's] case to proceed, and I made it very clear that [Taylor] would have to cooperate with the State for this proffer agreement to go forward. Additionally, the prosecutor read aloud the following quotation from the signed transcript:
>
> Q. [By the prosecutor] Ms. Taylor, you've had a moment to discuss with your attorney now, do you still want to move forward with this agreement? A. Yes.
>
> Q. Knowing that it could take a few months for these cases to be resolved? Is that a yes? A. Yes.

Q. Thank you.

On this basis, the district court found that Taylor had waived her right to a speedy trial:

> Well, what the record shows is that speedy trial would have ran 90 days after the Trial Information was filed on July 28th, 2014, which would have been about October 25th of 2014. The defendant then was here in Story County on November 12, 2014, where she signed a proffer to testify against the other part of this case, the person who hired her, and in exchange it sounds like she is going to plead to two simple misdemeanor offenses and was actually willing to file those guilty pleas on November 12, 2014.
>
> I think what the file here really shows is that even though a speedy trial had maybe technically ran on the 25th of October, the defendant acquiesced to that waiver of speedy trial when she signed a proffer on November 12 of 2014. There are multiple reasons why maybe she didn't want to file a motion to dismiss for speedy trial at that time . . . . It might have been that counsel wasn't for sure that the motion to dismiss would be granted for lack of speedy trial. She wanted to take advantage of the plea agreement. There was lots of discussion it sounds like about the delay, so the defendant and her attorney knew there would be a delay if she signed the proffer, and she signed the proffer anyway . . . .

The court of appeals affirmed. That court explained, "At the time Taylor entered into the agreement, she was aware the trial would be further delayed until after the trial of her codefendant, thus impliedly waiving her right to a speedy trial by agreeing to a delay in the proceedings."

According to rule 2.33(2)(*b*),

> If a defendant indicted for a public offense has not waived the defendant's right to a speedy trial the defendant must be brought to trial within 90 days after indictment is found or the court must order the indictment to be dismissed unless good cause to the contrary be shown.

Iowa R. Crim. P. 2.33(2)(*b*).

Waiver is thus one of three exceptions to the mandatory ninety-day speedy-trial deadline embodied in rule 2.33. "Under our rule, if trial does not commence within ninety days from indictment, dismissal is compelled unless the State proves (1) defendant's waiver of speedy trial, (2) delay attributable to the defendant, or (3) 'good cause' for the delay." *State v. Nelson*, 600 N.W.2d 598, 600 (Iowa 1999).

Here the State met its burden of establishing waiver. Of course, "[t]he failure of an accused to affirmatively assert his speedy trial rights does not amount to a waiver of those rights." *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012). However, in this case the defendant did much more than stand by and do nothing. She entered into a signed agreement on November 12 to resolve the pending charges against her by testifying against the other defendant and pleading guilty to two simple misdemeanors. This was with the clear understanding and agreement on the record that "it could take a few months for these cases to be resolved." Although this court's task would be considerably easier if the State had introduced the actual proffer agreement into evidence at the December 10 hearing, I agree with the district court and the court of appeals that the existing record is sufficient to establish the defendant waived the speedy-trial deadline.

By analogy, in *State v. Johnson,* defense counsel agreed to a trial date that was beyond the time limitation of 180 days in the Interstate Agreement on Detainers (IAD). 770 N.W.2d 814, 822 (Iowa 2009). There was no waiver of the IAD deadline per se, and (unlike here) the defendant was not present for and did not personally enter into the agreement regarding the new trial date. *See id.* at 822–23. Nonetheless, we found that "under the circumstances of th[e] case the district court correctly concluded Johnson waived the right to be tried within 180 days by

agreeing to a trial date outside of the 180-day time limitation." *Id.* at 823.

Taylor was personally present and signed off on a trial date that was going to be "a few months" away. This November 12 on-the-record agreement went well beyond "mere acquiescence." *See State v. Zaehringer*, 306 N.W.2d 792, 796 (Iowa 1981) (finding that where the defendant went beyond merely failing to object to a trial date beyond the speedy-trial deadline and also filed various pretrial motions, this was more than mere acquiescence and operated as a waiver).

The majority finds that "the State offered no evidence to meet its burden of demonstrating waiver through the proffer agreement in this case." This conclusion cannot be squared with the record discussed above.

Furthermore, unlike the majority, I would not penalize the district court for using the word "acquiesced" in its findings. True, we have said that "mere acquiescence" is not enough to establish waiver. *See id.* at 795. Yet we have also said that speedy trial was not violated when the defendant "clearly acquiesced in the trial date selected by the district court." *State v. Gansz*, 403 N.W.2d 778, 780 (Iowa 1987). Thus, if we are going to split hairs, "acquiescence" is not a problem—"mere acquiescence" is. Under our precedent, "mere acquiescence" means "a failure to object to a trial date beyond the period for speedy []trial." *Zaehringer*, 306 N.W.2d at 796. Here we have much more than a failure to object. Instead, as the trial court found, Taylor with the assistance of counsel verbally agreed to the timeframe in which her trial would occur and then signed off on the transcript of this verbal agreement.[1]

---

[1]Not all rights require the same form of waiver. For example, the right to speedy trial may be waived by defense counsel on the defendant's behalf without the

**II. Ineffective Assistance of Counsel Is a Separate Issue from Waiver.**

The majority tries to backstop its position on waiver by citing to several things the State did not show at the December 10 hearing. For example, the majority criticizes the State for failing to show plea negotiations had commenced prior to the expiration of the original speedy trial deadline. The majority further criticizes the State for failing to show Taylor received a net benefit for waiving speedy trial.

This approach confuses two issues—(1) whether there was a waiver of speedy trial and (2) whether Taylor's counsel rendered effective assistance in consenting to the waiver. If the record supports a waiver, as it does here, it is not the State's burden to show that the waiver was a *good deal* for the defendant. Rather, we generally preserve such questions for postconviction-relief proceedings (PCR) where the defendant can raise an ineffective-assistance-of-counsel claim. Lack of information is a reason to preserve the claim, not to decide it today.

For example, an after-the-fact waiver might have been a reasonable strategic choice because the State would have been able to show good cause for extension of the speedy trial deadline if pressed to do so. Moreover, even if with hindsight the State would not have been able to show good cause, the waiver might have been a reasonable defense option after considering the plea offered (here two simple misdemeanors) and the risk that a motion to dismiss for failure to comply with speedy trial would not have been successful. Or the waiver might have been a reasonable decision in light of the possibility that other charges could

---

defendant's express consent. *See State v. McPhillips*, 580 N.W.2d 748, 756 (Iowa 1998); *State v. LeFlore*, 308 N.W.2d 39, 41 (Iowa 1981).

have been filed against Taylor even if these charges were dismissed.[2] The point is: Without a PCR record, we do not know.

"In determining whether an attorney failed in performance of an essential duty, we avoid second-guessing reasonable trial strategy." *Everett v. State*, 789 N.W.2d 151, 158 (Iowa 2010). "Normally, cases involving issues of trial strategy and tactical decisions require postconviction proceedings to develop the record adequately." *State v. Hopkins*, 860 N.W.2d 550, 556 (Iowa 2015).

In short, the majority wrongly shifts the burden to the State to validate the waiver by proving there would have been good cause for a trial delay *even if there had been no waiver*. This turns ineffective assistance of counsel on its head, forcing the State to prove that Taylor's counsel was effective, instead of requiring Taylor to prove she was ineffective. *See, e.g.*, *State v. McPhillips*, 580 N.W.2d 748, 754 (Iowa 1998) (noting that the defendant "has the burden to prove" "counsel failed in an essential duty, and . . . prejudice resulted from counsel's error"). The majority presumes that Taylor's counsel was ineffective in agreeing to the waiver and then forces the State to prove otherwise.

The majority cites *Utter* as describing the circumstances under which a speedy trial waiver might be valid. *See State v. Utter*, 803 N.W.2d 647 (Iowa 2011). In fact, *Utter* was an ineffective-assistance case, not a waiver case. *See id.* at 651. In *Utter*, we found that the record was adequate for us to hold on direct appeal that the defendant's trial counsel had rendered ineffective assistance of counsel by failing to file a motion to dismiss after the State had violated the speedy indictment rule. *Id.* at 654–55. We said,

---

[2]The record before us indicates that the other defendant had admitted to paying Taylor for sex on another occasion a few days earlier.

> The only way trial counsel's failure to file a motion to dismiss could have possibly constituted a tactical or strategic decision would have been if counsel had reached an agreement with the State, such that the State would have forgone charging Utter with additional offenses arising from the same incident in exchange for Utter's waiver of the State's failure to comply with the speedy indictment rule and guilty plea.

*Id.* at 654. Significantly, under the "unique facts" of the *Utter* case, the State was precluded from bringing additional charges. *Id.* at 655.

*Utter* is distinguishable here. Unlike in *Utter*, the record is inadequate for us to determine that good cause for extension of the deadline was absent and therefore that a "violation" of the rule had already occurred as of the date of the alleged ineffective assistance (here November 12). *See id.* at 654. In addition, on this record one cannot rule out the possibility the State could have brought additional charges against Taylor.

I am troubled by the court's heightening of the requirements to prove waiver. Even though the defendant was represented by counsel and both the defendant and counsel agreed to a future trial date outside the speedy trial deadline, the court has set aside this agreement because the State failed to prove the agreement was in the defendant's best interests. Yet the very purpose of defense counsel is to insure that the defendant's interests are protected. And we have a separate remedy of ineffective assistance when defense counsel fails to do this.

For the foregoing reasons, I respectfully dissent.

Waterman, J., joins this dissent.