APPEL, Justice
(dissenting).
I respectfully dissent. The State’s case for a continuance made at the June 16, 2015 hearing was a nothingburger; The panel of the court of appeals clearly saw through the arguments and faithfully applied our caselaw when it unanimously found that the State failed to offer facts to support a continuance of trial for good cause “shown” under Iowa Rule of Criminal Procedure 2.33(2)(6). We should do the same.
The only purpose of this bifurcated trial was an attempt to avoid the speedy trial deadline of rule 2.33(2)(6). Such a start- and-stop strategy cannot be employed to avoid otherwise applicable speedy trial deadlines. See United States v. Stayton, 791 F.2d 17, 20 (2d Cir. 1986) (holding prosecution must show justification for delay between impaneling of jury and receipt of evidence).
In order to avoid dismissal under Iowa Rule of Criminal Procedure 2.33(2)(6) based on unavailability of witnesses, the State must show the necessity of the witnesses, that it exercised due diligence in attempting to secure the presence of witnesses needed for trial, and that, notwithstanding its diligent efforts, the witnesses needed for trial are unavailable. Note that the State must show, and not simply proclaim, good cause. The State bears the burden of showing such good cause. State v. Olson, 528 N.W.2d 651, 653 (Iowa Ct. App. 1995).
In determining whether the prosecution has offered factual support or shown good cause for a continuance, we have emphasized “the bare assertion” by a prosecutor that speedy trial deadlines could not be met is insufficient. State v. Winters, 690 N.W.2d 903, 909 (Iowa 2005). And, we have stated “[o]ur precedents ... disfavor using generalities in establishing good cause” and “good cause to avoid speedy trial must be rooted in facts, not conclusions.” State v. Taylor, 881 N.W.2d 72, 77 (Iowa 2016). These cases simply reinforce the plain text of the rule—“good cause” must be shown by facts in the record and not simply declared by the party seeking to avoid mandatory dismissal under rule 2.33(2)(b). See Sweet v. Myers, 200 Colo. 50, 612 P.2d 75, 77 (1978) (en banc) (finding unsupported allegation that a material witness was unavailable insufficient to support continuance because “[tjhere must be support for the findings in the record before the court”).
At the hearing on the motion to continue on June 16, the prosecution offered only conclusions on the question of necessity of the witnesses claimed to be unavailable. Specifically, the prosecution offered the conclusory. declaration that three of its eight designated medical witnesses who were needed “to prove the elements in this case qf the serious injury [were] unavailable.” That, literally, was the sum and substance of the State’s presentation on *714 the necessity of the witnesses. They were necessary witnesses, according to the State, because we say so. While the necessity of three of the eight designated medical witnesses was certainly declared by the State, the factual basis for the necessity of the witnesses was not “shown” as required by the rule at the June 16 hearing.
The prosecution’s factual showing of necessity at the June 16 hearing was thus a nothingburger. And yet there is more. At the time of the June 16 hearing, the prosecution, remarkably, had listed eight medical providers as witnesses. The minutes of testimony show substantial redundancy regarding their expected testimony.[4] No one examining the minutes of testimony would identify three witnesses as essential to the State’s case, and, indeed, the description of testimony of the medical witnesses was largely redundant and based on the same set of medical records.
This nothingburger record simply does not cut it under the rule and our caselaw. Mere conclusions by the prosecution do not entitle it to avoid dismissal for good cause shown. Good cause shown must be based on facts, not conclusory declarations of the prosecution. Taylor, 881 N.W.2d at 77; Winters, 690 N.W.2d at 909.
As a result of these well-established principles, mere incantation of the phrase “trial court discretion” is not an abracadabra that frees the prosecution from the mandatory provisions of rule 2.33(2)(5). We have emphasized the double-barreled mandatory command under our rule, which states “a defendant be brought to trial within ninety days ... or the court must order the indictment to be dismissed unless good cause to the contrary be shown.’ ” State v. Miller, 637 N.W.2d 201, 204 (Iowa 2001) (emphasis in original) (quoting Iowa R. Crim. P. 27(2)(t), now rule 2.33(2)(6)). The rule simply does not vest wide-open discretion with the trial court, end of story, next case. We have long held that the trial court’s discretion is “circumscribed by the limited exceptions to the rule’s mandate.” Id. (emphasis added); accord State v. Bond, 340 N.W.2d 276, 279 (Iowa 1983). The rule’s mandate requires that good cause be shown in the record by supported facts, not by conclusions.
There is some suggestion wafting through the majority opinion that defense counsel did not make an adequate record at the June 16 hearing. The district court seemingly interpreted the failure of defense counsel to challenge the assertions of the prosecution in a fashion as advocated by the majority. But where there are no facts offered to support the necessity of specific witnesses who are claimed to be unavailable, the court has no discretion but *715 to dismiss the action because good cause has not been shown under the rule. See Iowa R. Crim. P. 2.33(2)(6). The defendant has no burden on the good-cause-shown issue. Olson, 528 N.W.2d at 653.
In essence, what the majority has done is apply a Batson-type burden-shifting arrangement. See Batson v. Kentucky, 476 U.S. 79, 97, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986). Under the majority opinion in this case, when the prosecution articulates a reason for a continuance, the burden shifts to the defendant to show that the articulated ■ reasons are invalid. See id. But under rule 2.33(2)(¾, there is no Batson-type shifting of the burden to the defense based on the opposing party’s mere articulation of a reason purportedly justifying a continuance.
The failure of the prosecution to offer any factual support for the need for the witnesses at the June 16 hearing is telling. We will never know what kind of factual record the prosecution might have developed at the June 16 hearing, but we do know, in fact, that at trial only one of the three witnesses said to be needed were called to testify. Dr. Crystal Seluk did not appear. Apparently, two of the witnesses were “necessary” for purposes of avoiding dismissal under rule 2.33(2)(¾) on June 16, but were not in fact necessary when the matter came to trial' three weeks later on July 7. The majority opinion freelances about hypothetical reasons why this might have occurred, but I prefer to stick to facts in the record, rather than engage in an exercise of legal imagination. Further, the practice of declaring three witnesses necessary for trial, and only calling one of them after trial has been rescheduled, brings to mind the admonition of Justice Stevens that care should be taken to avoid converting speedy-trial considerations into “nothing more than managerial considerations for the prosecutor to manipulate.” United States v. Lovasco, 431 U.S. 783, 800, 97 S.Ct. 2044, 2054, 52 L.Ed.2d 752 (1977) (Stevens, J., dissenting).
Under our cases, “if the reason for the delay is 'insufficient, other factors will not avoid dismissal.” Ennenga v. State, 812 N.W.2d 696, 706 (Iowa 2012); accord Taylor, 881 N.W.2d at 77. Thus, there is no reqúirement that the defense show prejudice resulting from the delay. Taylor, 881 N.W.2d at 76; Ennenga, 812 N.W.2d at 705; State v. Sassman, 226 N.W.2d 808, 809 (Iowa 1975). And, the length of the delay does not relieve the State of its burden to show good cause to avoid dismissal. We have declared that the procedural deadline cannot be avoided by showing it had been violated “only a little bit.” Miller, 637 NW.2d at 205 (quoting State v. Goff, 244 N.W.2d 579, 582 (Iowa 1976)). We engage in a more strict speedy trial analysis where the defendant, as here, has consistently asserted his speedy trial rights. State v. Petersen, 288 N.W.2d 332, 335 (Iowa 1980).
In short, we have repeatedly and significantly departed from the multifactored balancing test- of Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972) (balancing length of delay, reason for delay, whether the right to speedy trial was demanded, and prejudice in speedy trial context). See Miller, 637 N.W.2d at 204 (citing cases departing from Barkers, balancing test). Reading the majority opinion, with its emphasis on prejudice and the length of the delay, you would never know that the Barker balancing test was abandoned decades ago in Iowa in favor of a more stringent application of speedy trial requirements.
The fact that there was some prior plea bargaining in this case is a red herring for a number of reasons. The district court wisely did not rest its decision on prior plea bargaining.-The defendant had consis *716 tently insisted on his speedy trial rights throughout the proceeding. Apparently, the majority does not believe on the record that the defendant may simultaneously pursue plea bargaining while insisting on speedy trial rights. But the prosecution had two weeks after the collapse of plea discussions to line up its medical witnesses for trial. In any event, the fact that plea discussions did take place over a short period of time has nothing whatsoever to do with the question of whether three of the eight designated medical witnesses were necessary to prove the prosecution’s case.
The lack of showing of necessity of the three witnesses is dispositive here, but there is more. The prosecution did only marginally better on the issue of due diligence in scheduling. At the hearing, the prosecution declared that it had been working “since [June 9, when the trial was rescheduled for June 23,] to schedule the expert witnesses in this case that we have.” But no factual indication was provided as to what those efforts were. The prosecution, without any factual showing, is claiming it exercised due diligence in scheduling the witnesses. But what, in fact, did the prosecution do?
One cannot glean that from the conelu-sory presentation at the June 16 hearing, but in a posttrial hearing, the details of the prosecution’s due diligence emerged. At the posttrial hearing, the prosecutor admitted that she was out of the office on June 9 when the trial date was continued and “[i]t was only upon my returning to the office on June 15th that I started working diligently to get these witnesses here.” So during the period between June 9, when the trial date was moved to June 23, and the June 16 hearing, the prosecution moved diligently to add new witnesses to the minutes of testimony but did not begin attempting to determine their availability for trial until the day before the June 16 hearing.
There was thus no evidence at all that the prosecution was “working hard” to schedule its witnesses. Behind the prosecution’s bare assertions, the prosecution presented no evidence at all of its efforts at the June 16 hearing. Only in the posttrial hearing was actual evidence of its effort presented, namely, that the prosecutor began her efforts to schedule the witnesses one day before the June 16 hearing.
On the question of due diligence, the case is similar to United States v. Brown, 819 F.3d 800 (6th Cir. 2016). In Brown, the United States Court of Appeals for the Sixth Circuit noted that the prosecutor had “missed a week of prep” and was “late getting ahold of’ the witness. Id. at 819. Here, the prosecutor was out of the office the week prior to the June 16 hearing and began trying to schedule witnesses the day before the hearing. In Brown, as here, there was no indication that the witness could not have been subpoenaed to appear at trial. Id. Further, there was no indication that the witness would not be available at some time during a timely period thereafter. Id.) see also Meine v. State, 309 Ark. 124, 827 S.W.2d 151, 154 (1992) (stating prosecution had not met its burden for continuance, in part, where it failed to subpoena doctor or inquire into the doctor’s schedule to find a time for testimony to take place).
Additionally, the State’s assertions of unavailability were insufficient. The State suggested that a radiologist was unavailable because of “work commitments.” But in State v. Clark, the Supreme Court of Idaho, citing—ironically now—the Iowa case of State v. Nelson, 600 N.W.2d 598, 601 (Iowa 1999), declared that “a thorough analysis of the reasons for the delay represents the soundest method for determining what constitutes good cause.” 135 Idaho *717 255, 16 P.3d 931, 936 (2000). The Idaho court further stated “the desire to accommodate [a witness’s] schedule cannot be said to comprise a reason that rises to the level of a legal excuse for the delay.” Id. at 937. An Idaho court followed our precedent. The majority today does not.
The State declared one witness, a neurosurgeon, was in surgery. It may be conceded that surgeons are often in surgery. But the question is whether the neurosurgeon could have been available at some time during a multiday trial for testimony. See United States v. Burrell, 634 F.3d 284, 292 (5th Cir. 2011) (finding no good cause when government repeatedly failed to present evidence regarding whether witness in a training program could be scheduled without interfering with program); Meine, 827 S.W.2d at 154 (holding prosecution failed to meet its speedy trial burden when it failed to subpoena doctor or inquire into doctor’s schedule to find when he might be available).
Finally, the prosecution asserted that Dr. Seluk was in Europe until June 30. Trial could have timely commenced on Friday, June 26 with jury selection. The trial could then have resumed on Monday, June 29 and Tuesday, June 30 with the taking of evidence. There was no showing that Dr. Seluk could not have testified on Wednesday, July 1 in this, relatively simple, straightforward trial.
The majority of this court today has declined in this case to apply Iowa Rule of Criminal Procedure 2.33(2)(6) and applicable caselaw. It announces sub silentio a new rule of law, namely, that a prosecutor’s conclusory and unsubstantiated declarations of the need for certain witnesses, which it declares are unavailable, are sufficient to support a continuance. The majority also in effect shifts the burden to the defense to prove that the prosecution’s conclusory assertions are without a basis in fact. That is a conceivable approach, perhaps, but it does not reflect the approach under rule 2.33(2)(6) or the existing caselaw. What really seems to be at work in this case is what Justice Douglas saw as the “hydraulic pressures” to affirm convictions at the expense of enforcing established legal rules. Terry v. Ohio, 392 U.S. 1, 39, 88 S.Ct. 1868, 1889, 20 L.Ed.2d 889 (1968) (Douglas, J., dissenting).
As a result, for the above reasons, I agree with the court of appeals decision in this case. I would reverse the district court and remand the case for dismissal.
Wiggins and Hecht, JJ.-, join this dissent.

. At the June 16 hearing, the prosecution did not assert that Dr. Crystal Seluk, for instance, was a required witness on the question of damage to Matthew Browning’s hearing or ear. In the minutes of testimony that were part of the record on June 16, Dr. Seluk’s described testimony was nearly identical to that of two other designated experts, Dr. Evelyn Reher and nurse Tracie Kerns. According to the minutes, Dr. Reher and Kerns would testify, among other things, about “hemotym-panum [blood in the middle ear].” Dr. Seluk was described as offering testimony that Browning “had evidence of obvious hemo-tympanum with an intact tympanic membrane.” Any post-hoc claim that Dr. Seluk was a necessary witness related to hearing loss was not raised at the June 16 hearing. Moreover, such a claim is belied by the record that was available on June 16 and is further weakened by the fact that Dr. Seluk was not called to testify at trial by the prosecution. There is also nothing in the minutes to suggest that of the eight medical professionals listed, a specific neurologist or radiologist had testimony different from other designated witnesses. Nearly all the medical witnesses were listed as testifying about subdural hematoma as a result of the blow to Browning’s head.