# IN THE COURT OF APPEALS OF IOWA

No. 16-1174
Filed January 24, 2018

**JAMES ABRAHAM HILDRETH,**
  Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
  Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.


James Hildreth appeals the dismissal of his application for postconviction relief, asserting his trial counsel was ineffective. **AFFIRMED.**


John Audlehelm of Audlehelm Law Office, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee State.


Considered by Danilson, C.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

James Hildreth appeals from the dismissal of his application for postconviction relief, asserting his waiver of his right to a speedy trial was invalid by way of his trial counsel's ineffective assistance. Upon our review, we affirm.

### I. *Background Facts and Proceedings*.

On December 2, 2009, Hildreth was charged by trial information with two counts of second-degree sexual assault for sexually assaulting his fiancée's then six-year-old daughter. Trial was scheduled for January 7, 2010. On December 14, 2009, Hildreth's trial attorney filed a notice of taking depositions in the case. The prosecutor advised Hildreth's counsel that the State would withdraw any plea offer if Hildreth deposed the child victim. On January 5, 2010, Hildreth's counsel advised the prosecutor that Hildreth would be willing to forego depositions in exchange for a favorable plea offer. The same day, the State's Criminalistics Laboratory issued its DNA Report detailing the initial results of its DNA screening tests on the evidentiary samples collected from the State's evidence. Little DNA evidence was found in the collected samples, and what was found was identified to most likely belong to the victim. Further testing was ongoing, and the prosecutor and Hildreth agreed to continue the trial twice while awaiting the lab's completed DNA report, with trial scheduled for March 1, 2010. A status hearing was held February 24, 2010, and Hildreth was present. There, the prosecutor indicated the evidence was still being tested, and he did not expect the completed report for another two to three weeks. Ultimately, the district court was advised by the prosecutor and Hildreth's counsel that three options were before Hildreth.

Hildreth's counsel explained that the State had tendered a plea offer to Hildreth, wherein Hildreth would plead guilty to lascivious acts, a class "C" felony without the mandatory minimum. Counsel advised he had discussed the offer with Hildreth, but Hildreth had indicated he wanted to wait until the DNA testing was complete before accepting the offer. The prosecutor was willing to go to trial on the scheduled date, which complied with Iowa Rule of Criminal Procedure 2.33(2)(b)—Iowa's speedy-trial rule. The prosecutor was also willing to accept the plea offer that day, or, if Hildreth agreed to waive his rule 2.33(2)(b) right to trial within ninety days, the prosecutor would agree to continuing trial to await the results of the additional DNA testing. The prosecutor further stated:

> I just want to make sure that Mr. Hildreth understands that he is not going to later, if he gets convicted, he is not going to blame his attorney because he didn't do depositions or he didn't get the DNA, which could be favorable; could be unfavorable to him. So those are the concerns.

The court conducted a colloquy with Hildreth:

> THE COURT: So, Mr. Hildreth, as I understand it, you are willing to waive and you are waiving speedy trial so you can get the DNA evidence. Is that correct?
> [HILDRETH]: Yes.
> THE COURT: You understand, though, I will try to get this trial up within a very reasonable time. And I am trying to ballpark about 30 days or so. It could be because of the court's docket I can't do it that fast. It may take a little longer. Do you understand that?
> [HILDRETH]: Yes, I do.
> THE COURT: You are willing to go along with that?
> [HILDRETH]: Yes.
> . . . .
> THE COURT: And because you are taking that position, [the prosecutor] is saying, "All right, Judge. Let's continue. I'm going along. I will continue the trial date. If he wants depositions, we will get them set up. . . ." And if that is the way this runs its course, [the prosecutor] is not pulling the plea offer or at least not—just not saying, "Okay. All deals are off, we go to trial in 30 or 60 days. . . ."

. . . .

    THE COURT: So plea discussions are still on the table as long as that victim is not deposed. . . .   Do you understand that, Mr. Hildreth?

    [HILDRETH]: Yes, I do.

The prosecutor requested that Hildreth sign a waiver of his rule 2.33(2)(b) right, and he did.

Shortly thereafter, the lab's DNA report was completed.  The results were less than favorable to Hildreth, including finding seminal fluid on the victim's panties consistent with Hildreth's DNA profile.  Thereafter, the State withdrew its prior plea offers.

The matter was tried to the bench, and Hildreth was found guilty of two counts of second-degree sexual assault.  We affirmed his convictions on direct appeal.  *See State v. Hildreth*, No. 10-1641, 2013 WL 2371194, *1-2 (Iowa Ct. App. May 30, 2013).  Hildreth later filed an application for postconviction relief (PCR), claiming, among other things, that his waiver of his right to a speedy trial was invalid by way of ineffective assistance of his trial counsel.  Following a hearing, the PCR court dismissed Hildreth's PCR application.

Hildreth now appeals that ruling, arguing his trial counsel was ineffective.  Our review is de novo.  *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015).  Ineffective assistance is shown by establishing counsel breached an essential duty that resulted in prejudice.  *See id.*

## II.  *Discussion.*

Under Iowa Rule of Criminal Procedure 2.33(2)(b), if a defendant indicted for a public offense is not brought to trial within ninety days, the indictment must be dismissed unless the State proves one of the following exceptions

occurred: (1) the defendant waived the right, (2) the defendant caused the delay, or (3) there was good cause for the delay. *See State v. Taylor*, 881 N.W.2d 72, 78 (Iowa 2016); *see also State v. Utter*, 803 N.W.2d 647, 652 (Iowa 2011). To establish the defendant waived his speedy-trial right, the State must show the defendant intentionally relinquished or abandoned the right. *See Taylor*, 881 N.W.2d at 78. "That is . . . the defendant must do so knowingly and intelligently." *Id.* at 79. Mere acquiescence of the right is not sufficient. *See id.* at 80.

In the present case, because the trial information was filed December 2, 2009, Hildreth had to be tried by March 2, 2010, unless one of the exceptions occurred. *See id.* at 78-80; *see also* Iowa R. Crim. P. 2.33(2)(b). Although Hildreth acknowledges he signed a waiver of his right to a speedy trial, he claims the waiver was not knowingly or intelligently made because of his trial counsel's actions—or lack thereof. More specifically, Hildreth insists that his trial attorney failed to provide him with the January 2010 forensic lab report, and if Hildreth had been given the report, he would not have waived his speedy-trial right. Hildreth asserts this requires dismissal of his charges. We disagree.

Hildreth relies upon *Taylor*, wherein the Iowa Supreme Court found that the district court erred in not granting Taylor's motion to dismiss her indictment because her speedy-trial right had been violated. *See Taylor*, 881 N.W.2d at 74-80. Based upon the unusual facts of the case, the supreme court disagreed that the State had shown both good cause for its delay in bringing Taylor to trial within ninety days of her indictment and that Taylor waived her right. *See id.* Consequently, it did not address Taylor's ineffective-assistance-of-counsel claim. *See id.* at 80.

Two justices of the court dissented in *Taylor* and would have affirmed the finding that Taylor waived her right to a speedy trial. *See id.* at 80-81 (Mansfield & Waterman, JJ., dissenting). Nevertheless, those justices would have preserved for possible PCR proceedings the question of whether Taylor's counsel rendered effective assistance in consenting to the waiver, because, in the dissent's view, there were possible tactical reasons that would have made waiver a good decision, even after the ninety-day deadline, such as negating the possibility of other charges being filed against Taylor. *See id.*

The dissent in *Taylor* discussed and distinguished *Taylor* from another case, *Utter*, where the supreme court found the record adequate to address on direct appeal Utter's ineffective-assistance-of-counsel claim concerning Utter's waiver of her speedy-trial right. *See id.* (discussing *Utter*, 803 N.W.2d at 655). Somewhat akin to Hildreth's argument here, the court in *Utter* found:

> Utter would not have pled guilty if she had known the court was required to dismiss the information under rule 2.33 . . . . Consequently, she did not enter into the plea voluntarily or intelligently. Thus, a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

803 N.W.2d at 655. On this basis, the court found Utter's trial counsel was ineffective, vacated Utter's guilty plea, and remanded for dismissal of the information pursuant to rule 2.33. *See id.* at 655-56.

Hildreth's claim here is kind of a hybrid of those addressed in *Taylor*—in both the majority and dissenting opinions—and *Utter*. However, the facts and procedural posture of both *Taylor* and *Utter* make this case distinguishable. *See Taylor*, 881 N.W.2d at 79-80; *Utter*, 803 N.W.2d at 653-55. Hildreth's claim, like in

*Utter* but unlike *Taylor*, is one of ineffective assistance. Utter was required to show she would not have pled guilty but for her counsel's ineffective assistance. *See Utter*, 803 N.W.2d at 653-55. Utter was able to do that by first showing her trial counsel permitted her to enter a guilty plea "after the speedy indictment time expired," which was a breach of an essential duty. *Id.* at 653. That is not what happened here.

When Hildreth agreed to waive his speedy-trial right and wait for the additional lab report, the speedy-indictment time had not expired; in fact, the State was prepared to go to trial within that deadline. Hildreth's trial counsel testified at the PCR hearing that he advised Hildreth of the risk of waiting for the additional report, and although he could not recall for certain, trial counsel testified it was his ordinary practice to give his clients lab reports when received and believed he would have given Hildreth the January 2010 report. The transcript from the February 2010 pretrial conference shows Hildreth was explicitly advised there was a possibility the additional report could be unfavorable to him, and there is no indication that Hildreth was unaware what was in the January 2010 report or that he had not seen it or received it.

Moreover, unlike in *Taylor*, Hildreth was expressly informed of his speedy-trial right and agreed to waive it so he could await the completion of the additional report. *See* 881 N.W.2d at 79-80. He could have been tried within ninety days, but he knowingly waived the right. Hildreth did not establish his trial counsel breached an essential duty. Consequently, Hildreth cannot show his counsel

rendered ineffective assistance. Accordingly, we affirm the ruling of the PCR court dismissing Hildreth's PCR application.

**AFFIRMED.**