STATE of Iowa, Appellee,

v.

Oliver Vernon MILLER, Appellant.

No. 00-0644.

Supreme Court of Iowa.

Dec. 19, 2001.

Linda Del Gallo, State Appellate Defender, Tricia A. Johnston, Assistant State Appellate Defender, and Don Schroeder, West Liberty, for appellant.

Thomas J. Miller, Attorney General, Karen Doland, Assistant Attorney General, and James Detaeye, County Attorney, for appellee.

NEUMAN, Justice.

This is a case about mixed messages.

Angered over the outcome of a trial, Oliver Miller reduced $25 in court costs to pennies, wrapped them in socks and barbed wire, and sent them to the Marshall County clerk of court in a crudely-taped Valvoline Oil box. He affixed no return address to the package and, in a deliberate fit of pique, misspelled the name of the clerk, Doloris Falstrup, as Doloris "Fascistrup." Block letters on one side of the box warned "TOP OPEN CAREFULLY." Shipped via UPS, the package weighed roughly seventeen pounds.

Alarmed over the heavy and suspicious-looking box, court officials called in the bomb squad. They evacuated the courthouse for four hours while firearms experts x-rayed the package and then "exploded" it at a firing range. Of course the explosion yielded only a large quantity of change, athletic socks and barbed wire. Amidst the rubble, a crumpled note was found: "Kindly accept this as payment of court costs of the trial on August 2, 1999, against Oliver Miller. Thanks."

Because Miller sent one message but court officials got another, the State charged Miller with a crime called "False Reports." *See* Iowa Code § 712.7 (1999).[1] At trial, and now on appeal following conviction, Miller poses interesting statutory and constitutional questions involving free speech, vague and overbroad statutes, and the sufficiency of the evidence to support the charge. But as interesting as those issues might be, we need not address them because the State failed to bring Miller to trial within the ninety-day deadline of Iowa rule of criminal procedure 27(2)(b). We therefore reverse.

## I. Background Facts.

The facts pertinent to the speedy-trial issue are essentially undisputed. On September 10, 1999, the State filed a trial information charging Miller with a violation of section 712.7, false reports. Within three days, Miller's counsel moved for a bill of particulars. The motion was accompanied by a written arraignment form and plea of not guilty that specifically demanded Miller's right to a speedy trial. A subsequent "Arraignment Order" set trial for November 2.

The court sustained Miller's motion for bill of particulars, and the State responded by October 7. Meanwhile, on September 24, Miller moved to dismiss the trial information on three grounds: the false reports statute is unconstitutionally overbroad because it criminalizes protected speech, the statute is impermissibly vague because it does not give fair warning of what conduct is prohibited, and prosecution under section 712.7 violates defendant's right to due process and fundamental fairness under the United States and Iowa constitutions. On October 11, four days after the State filed its bill of particulars, Miller moved to dismiss the prosecution on the additional ground "the particulars stated do not constitute the offense charged."

A hearing on the consolidated motions to dismiss was held on October 25 before Judge Dale Ruigh. The parties submitted written briefs and offered argument in support of their positions. At the close of the hearing, the court observed that it could not render a decision before the trial date scheduled a week hence. Although the record is unclear on the point, it appears the trial date was indefinitely continued pending the court's ruling on the motions. The court filed its ruling on December 2, thirty-eight days after the hearing and seven days prior to the speedy-trial deadline.

Trial commenced on December 14 before Judge Carl Peterson. An insufficient number of jurors responded to the summons, and many of those who appeared had knowledge of the case. Because the panel was inadequate to comply with the rules of criminal procedure, the court declared a mistrial. It then rescheduled the

---

1. The statute states:
   A person who, knowing the information to be false, conveys or causes to be conveyed to any person any false information concerning the placement of any incendiary or explosive device or material or other destructive substance or device in any place where persons or property would be endangered commits a class "D" felony.
   Iowa Code § 712.7.

case for January 11, 2000, whereupon the State asked for a trial the very next day, noting it was already "the 91st day." Miller then moved for dismissal based on violation of his right to be tried within ninety days from the filing of the trial information. *See* Iowa R.Crim. P. 27(2)(b).[2]

In a subsequent written ruling, the court denied Miller's motion to dismiss. The court reasoned that "some" of the delay was attributable to the time needed to rule on Miller's motions; the last available trial date in Marshall County before the speedy-trial deadline was November 30; Judge Ruigh's ruling was not filed until December 2; and trial was set for the next available trial date following the ruling. Because the deadline was missed by only one day, the court ruled, Miller suffered no prejudice warranting reversal.

## II. Scope of Review.

■■■ Miller cites error in the court's application of procedural rules governing speedy trial; thus our review is for the correction of errors at law. *State v. Finn,* 469 N.W.2d 692, 693 (Iowa 1991). The trial court's discretion to avoid dismissal under rule 27(2)(b) is circumscribed by the limited exceptions to the rule's mandate. *State v. Bond,* 340 N.W.2d 276, 279 (Iowa 1983); *State v. Olson,* 528 N.W.2d 651, 653 (Iowa Ct.App.1995). So the question, ultimately, is whether the trial court properly exercised—or abused—its limited discretion under the rule. *Bond,* 340 N.W.2d at 279.

## III. Applicable Law.

■■■ Rule 27(2)(b) states that a defendant *"must* be brought to trial within nine-

ty days after indictment is found or the court *must* order the indictment to be dismissed unless good cause to the contrary be shown." (Emphasis added.) We have repeatedly observed that the rule is more stringent than its constitutional counterpart recognized in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *State v. Nelson,* 600 N.W.2d 598, 600 (Iowa 1999); *Bond,* 340 N.W.2d at 278; *State v. Petersen,* 288 N.W.2d 332, 335 (Iowa 1980). Thus, as we explained in *Nelson,* we do not apply *Barker's* four-factor balancing test (length of delay, reason for delay, whether right to speedy trial was demanded, and prejudice). *Nelson,* 600 N.W.2d at 601 n. 2. Instead, we have interpreted our rule to require dismissal for failure to comply with the rule's ninety-day deadline unless the defendant has waived speedy trial, the delay is attributable to the defendant, or other "good cause" exists for the delay. *Id.* The burden of proving an exception to the rule's deadline rests squarely with the State. *Olson,* 528 N.W.2d at 653.

■■■ "Delay attributable to the defendant" may include whatever passage of time is "reasonably necessary" to act upon a defendant's motions. *State v. Moehlis,* 250 N.W.2d 42, 45 (Iowa 1977); *State v. Searcy,* 470 N.W.2d 46, 47 (Iowa Ct.App. 1991); *accord Nelson,* 600 N.W.2d at 601. In *Searcy,* for example, the defendant's filing of a motion to suppress thirty days after the trial date was set, and only three days prior to trial, justified good cause for a continuance beyond the speedy-trial deadline. *Searcy,* 470 N.W.2d at 47. Similarly, where multiple defendants' motions to suppress were filed one week before

---

2. The rule states:

    If a defendant indicted for a public offense has not waived his or her right to a speedy trial he or she must be brought to trial within ninety days after indictment is

found or the court must order the indictment to be dismissed unless good cause to the contrary be shown.

Iowa R.Crim. P. 27(2)(b).

trial, this court found no abuse in the trial court's discretion to continue a trial six days beyond the deadline "to permit resolution of the suppression motions, which might have been dispositive of the cases." *State v. Todd*, 468 N.W.2d 462, 470 (Iowa 1991). On the other hand, a defendant who files a timely motion does not thereby forfeit the right to be tried without lengthy or unexplained delay. *Nelson*, 600 N.W.2d at 601. "Prior cases teach that the general press of court business is insufficient to avoid dismissal under a speedy-trial rule, even for a busy judge sitting in a high-volume court." *Id.* at 602.

■ This brings us to the concept of "good cause." We have repeatedly said that, under our rule, good cause "focuses on only one factor: the reason for the delay." *Id.* at 601 (quoting *Petersen*, 288 N.W.2d at 335); *Bond*, 340 N.W.2d at 279. We also made plain in *Petersen* that we do not adhere to the four-factor *Barker v. Wingo* test because "[i]f the reason for the delay is sufficient the other factors are not needed. If the reason for the delay is insufficient *the other factors will not avail to avoid dismissal.*" *Petersen*, 288 N.W.2d at 335 (emphasis added). Yet, mindful that "delay cannot be evaluated entirely in a vacuum," our cases have tended to repeat the *Barker* factors as "surrounding circumstances" having some limited bearing on the inquiry. *Id.* We now take this opportunity to clarify, as we did in *Petersen*, that such factors are,

> important, *if at all,* only insofar as they bear on the sufficiency of the reason itself. The shortness of the period, the failure of the defendant to demand a speedy trial, and the absence of prejudice are legitimate considerations *only insofar as they affect the strength of the reason for delay.* This means that, to whatever extent the delay has been a short one, *or the defendant has not de-*

*manded a speedy trial,* or is not prejudiced, a weaker reason will constitute good cause. On the other hand, if the delay has been a long one, *or if the defendant has demanded a speedy trial,* or is prejudiced, a stronger reason is necessary to constitute good cause.

*Id.; accord Nelson*, 600 N.W.2d at 601; *Bond*, 340 N.W.2d at 279.

■ Finally, it is axiomatic that defendants have no duty to bring themselves to trial. *Nelson*, 600 N.W.2d at 602; *State v. Orte*, 541 N.W.2d 895, 898 (Iowa Ct.App. 1995). And, because every rule of limitation sets an arbitrary date beyond which "certain actions cannot be brought or certain rights cannot be enforced," a procedural deadline cannot be escaped merely by showing it has been violated "only a little bit." *State v. Goff*, 244 N.W.2d 579, 582 (Iowa 1976) (quoting *State v. Nelson*, 222 N.W.2d 445, 449 (Iowa 1974)).

## IV. Analysis.

■ At the outset we note that most, if not all, cases justifying reversal based on speedy-trial violations involve delays numbering weeks or months, not days. *See, e.g., Nelson*, 600 N.W.2d at 601 (four-month delay); *Orte*, 541 N.W.2d at 898 (seven-month delay); *Olson*, 528 N.W.2d at 654 (delay "spanned nearly eight months"). Here, the trial slipped only one day past the deadline before the court was faced with a motion to dismiss. But, as the cases recited in the preceding division make clear, the question is not whether the delay was great or small, but whether the reason given justifies departure from the rule at all.

The trial court concluded that "a number of days" must be fairly attributable to Miller based on the time necessary for ruling on his motions to dismiss. Defense counsel conceded as much, readily agreeing at the October 25th hearing that a

ruling could not reasonably be expected before the trial then set for November 2. But at that point, no deadline was looming. Because all defense motions had been timely filed and heard with reasonable promptness, nearly forty-five days remained before the deadline would expire.

We think it significant that, in fact, Judge Ruigh's ruling came down with a week to spare. Yet instead of honoring Miller's speedy trial demand, the court simply disregarded the rule's mandate—and Miller's rights under it—to set a trial date at its convenience. The court's subsequent speedy-trial ruling attempted to justify its decision by stating that Miller "has not shown that he was prejudiced by the delay of one day." But the burden was not on Miller. The burden was on the State, in the first instance, to prove "good cause" for missing the deadline. It made no such case in the trial court.

 Implicit in the court's ruling is its deference to the established trial schedule for Marshall County, a schedule that evidently accommodated no "regular" trial date after November 30 and before December 14. Under this rationale, because Judge Ruigh's ruling was not filed before the last "regular trial date" in Marshall County before the speedy-trial deadline, Miller was simply out of luck. What the court's ruling disregards is the important distinction between "chronic court congestion and specific circumstances arising out of unique, non-recurring events which create a particular scheduling problem." *Bond,* 340 N.W.2d at 279. The latter justifies departure from the rule, the former does not. *See id.* (citing cases).

Given Miller's demand for speedy trial and strict adherence to pretrial deadlines, only a strong reason would justify departure from rule 27(2)(b)'s mandate. Unfortunately the record before us furnishes *no* reason for the delay, let alone a strong one. As a result, we cannot say the court properly exercised its limited discretion under the rule. Its decision must be reversed.

In keeping with the mandate of rule 27(2)(b), the charges against Miller must be dismissed. We therefore reverse the judgment entered upon Miller's conviction and remand to the district court for dismissal of the trial information.

**REVERSED AND REMANDED.**