# IN THE COURT OF APPEALS OF IOWA

No. 18-0967
Filed September 11, 2019

**RICHARD JOSEPH EHLER,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Warren County, Thomas P. Murphy,

Judge.

Richard Ehler appeals the dismissal of his application for postconviction

relief. **REVERSED AND REMANDED.**

George B. Jones of George B. Jones, PLLC, Lamoni, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney

General, for appellee State.

Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**TABOR, Judge.**

Criminal defense attorneys have a material duty to ensure the State follows the speedy-trial rule.[1] The State did not bring Richard Ehler to trial within one year of his arraignment as mandated by Iowa Rule of Criminal Procedure 2.33(2)(c). Ehler's trial counsel moved to dismiss but failed to cite a key authority to the district court.[2] After the district court denied the motion to dismiss and the supreme court declined to hear Ehler's case before final judgment, counsel advised Ehler to accept a favorable plea offer.

In his postconviction-relief action, Ehler alleged his plea was involuntary because trial counsel was ineffective. The district court denied Ehler's application, holding (1) trial counsel appropriately raised the speedy-trial issue and (2) Ehler did not show but for counsel's errors he would have turned down the plea offer and insisted on going to trial. On appeal, Ehler reiterates trial counsel's responsibility:

> Counsel had a duty to properly and fully evaluate the merits of the speedy trial issue, and to advise Ehler that the trial court was wrong in its denial of the motion to dismiss. Had counsel more fully researched the applicable case law, counsel would have been aware of clear precedent in Ehler's favor, demonstrating that, under the facts present in this case, there was no good cause for the State's failure to bring him to trial within one year of arraignment.

Because no good cause existed for the State's failure to comply with the speedy-trial rule, counsel's advice was not within the range of competence demanded of attorneys in criminal cases. Thus we reverse and remand for dismissal.

---

[1] *Ennenga v. State*, 812 N.W.2d 696, 702 n.5 (Iowa 2012); *State v. Utter*, 803 N.W.2d 647, 653 (Iowa 2011), *overruled on other grounds by Schmidt v. State*, 909 N.W.2d 778 (Iowa 2018).

[2] Ehler faults counsel for not relying on *State v. Campbell*, 714 N.W.2d 622 (Iowa 2006). On appeal, Ehler contends *Campbell* "is arguably the most important case to a proper determination of the motion to dismiss in this case."

## I.   Case History

### A.   Criminal Proceedings

Ehler's ineffective-assistance-of-counsel claim hinges on the violation of his one-year speedy-trial right.   For that reason, we include this detailed chronology of events in Ehler's criminal case:

| | | |
|---|---|---|
| August 2013 | 8/1/2013 | The State filed criminal complaints, alleging Ehler committed three counts of sexual abuse in the third degree. |
| | 8/12/2013 | The State filed its trial information. |
| | 8/19/2013 | During a bond-review hearing, the district court reduced Ehler's bond and set a pretrial conference for September 23, 2013. |
| | 8/19/2013 | Defense counsel filed a written arraignment, plea of not guilty, and waiver of Ehler's ninety-day speedy-trial right under Iowa Rule of Criminal Procedure 2.33(2)(b). |
| | 8/23/2013 | Defense counsel filed a motion to produce. |
| September 2013 | 9/23/2013 | The court rescheduled the pretrial conference date for October 7, 2013. |
| October 2013 | | |
| November 2013 | 11/4/2013 | The court rescheduled the pretrial conference date for December 2, 2013. |
| December 2013 | 12/2/2013 | The court rescheduled the pretrial conference date for January 27, 2014 and set trial for April 2, 2014. |
| January 2014 | | |
| February 2014 | 2/26/2014 | The prosecutor subpoenaed a witness for deposition on March 19, 2014. |
| March 2014 | 3/19/2014 | Defense counsel deposed two witnesses. |
| | 3/20/2014 | Defense counsel emailed the prosecutor suggesting a plea to lesser charges. |
| | 3/20/2014 | That same afternoon, defense counsel again emailed the prosecutor asking him to disregard the previous message, saying he did not have "authority to propose any plea at this time." |

| | | |
|---|---|---|
| April 2014 | 4/1/2014 | Defense counsel emailed the prosecutor, saying: "It looks like Ehler is still on the trial docket. Do you need me to file a motion, unresisted, and if so is there a judge to rule on it around? Also is the court adm aware of the situation? I thought it was already continued." |
| | 4/11/2014 | The prosecutor emailed defense counsel proposing six trial dates: May 14, 2014; May 28, 2014; June 18, 2014; June 25, 2014; July 23, 2014; and July 30, 2014. The prosecutor concluded: "I will get an order signed after I hear back from you." |
| | 4/14/2014 | Defense counsel emailed the prosecutor to discuss the possibility of a plea deal but did not address the proposed trial dates. |
| | 4/15/2014 | Defense counsel emailed the prosecutor, saying: "Please call me regarding the proposed trial dates. Thanks." |
| | 4/25/2014 | Defense counsel emailed the prosecutor, saying: "Several things. First, attached is [Ehler's] Witness List, and the first Motion in Limine. I requested for you to call me about the trial date on this . . . and still would like to talk to you. Next, I would like a formal answer to my Motion to Produce." |
| | 4/29/2014 | Defense counsel again emailed the prosecutor, saying: "Attached is the second discovery motion. Would you make a written response to both please? We also need to tal[k] about court dates." |
| May 2014 | 5/1/2014 | Defense counsel filed a second motion to produce. |
| | 5/6/2014 | The court set a hearing on the motion to produce for May 19, 2014. |
| | 5/9/2014 | Defense counsel filed Ehler's witness list and a combined motion in limine/motion to suppress. |
| | 5/22/2014 | Defense counsel emailed the prosecutor asking for a copy of a discovery packet the prosecutor had showed him. |
| June 2014 | | |
| July 2014 | | |
| August 2014 | 8/19/2014 | One-year speedy-trial deadline. |
| September 2014 | 9/8/2014 | The court scheduled a pretrial conference for September 15, 2014. |

In October 2014, defense counsel moved to dismiss the prosecution based on the State's failure to bring Ehler to trial within one year. The motion asserted Ehler "had not caused any delay that would come close to justifying the State's actions." Defense counsel highlighted the "good cause" standard for extending the trial beyond the one-year deadline. He then asserted good cause was "obviously nonexistent in this case." Defense counsel alleged he had been "diligent and professional in handling the matter." In his view, the prosecutor had not reciprocated that courtesy—leaving phone calls unreturned.

For his legal argument, defense counsel cited Iowa Rule of Criminal Procedure 2.33(2) and two cases: *State v. Miller*, 637 N.W.2d 201 (Iowa 2001), and *State v. Herrmann*, No. 06-1829, 2007 WL 3376881 (Iowa Ct. App. Nov. 15, 2007).

The motion argued dismissal is required under the rule unless the defendant waived speedy trial, the delay is attributable to the defendant, or other "good cause" exists for the delay. *See Miller*, 637 N.W.2d at 204. The motion also quoted *Herrmann* for the proposition:

> "Once the one-year period has expired the State must show either a waiver on the part of the defendant or good cause for the delay." . . . [G]ood cause focuses on only one factor, the reason for the delay. The State's burden of demonstrating good cause is a heavy one.

*Herrmann*, 2007 WL 3376881, at *2 (citations omitted) (quoting *State v. Mary*, 401 N.W.2d 239, 241 (Iowa Ct. App. 1999)).

In resisting dismissal, the State blamed Ehler for seeking to continue the pretrial conferences scheduled for late 2013 and early 2014 and asking to reschedule the April 2014 trial date. The State also noted the defense filed two

motions to produce and a combined motion to suppress and motion in limine. But the State acknowledged, "The lack of resetting went unnoticed until early September when the State realized that this matter had fallen off the [c]ourt's docket and the State requested the [c]ourt set the matter back on the docket."

The district court denied Ehler's motion to dismiss, largely adopting the State's argument:

> [Ehler] participated in the delay of the timely prosecution of this matter through repeated [p]retrial [c]onferences, the taking of depositions outside the timelines outlined in Iowa Rule of Criminal Procedure 2.13(6) . . . , filing of a [m]otion to [s]uppress outside the timelines outlined in 2.11(4) . . . , and the continuation of the April 2, 2014 trial date. [Ehler] acquiesced in the delay and should not profit from the State's failure to obtain an extension of the time period for trial.

That ruling "shocked" defense counsel, according to his postconviction testimony. Counsel persisted in advancing Ehler's speedy-trial claim, asking our supreme court to grant discretionary review. Here's how defense counsel framed the issue:

> Whether delay can be attributed to [Ehler] at early stages of the case, because of routine pretrial conference continuances and the scheduling and taking of depositions, despite obvious and flagrant prosecutorial indifference from April 1, 2014, until May 22, 2014, leading up to the expiration of the one year speedy trial deadline on August 14, 2014.

On top of that, the application impugned the district court's reliance on pretrial discovery matters and motion practice in attributing the delay to Ehler. The application cited just one authority—Rule 2.33(2)(c). The supreme court denied discretionary review. And the district court set Ehler's case for trial.

Before the trial date, the State offered to dismiss two counts of sexual abuse in the third degree in exchange for Ehler's guilty plea to the remaining count.

Feeling defeated, defense counsel encouraged Ehler to accept the State's plea offer. As counsel explained during the postconviction hearing:

> I'm sure I would have told Mr. Ehler, like I would have told anybody, that the supreme court doesn't usually reverse on cases like this. And there was at least a prima facie case I didn't agree with of delay attributable to the defendant, . . . and I would have told Mr. Ehler, like I would have told him if the case was today, that this is a really good deal; you're going to lose some rights.
>
> . . . .
>
> So I would have told Mr. Ehler . . . that he should probably do it and he—he could easily lose on appeal and go to prison if convicted at trial.

With that advice from counsel, Ehler pleaded guilty to one count of third-degree sexual abuse (a class "C" felony), and the court sentenced him to an indeterminate prison term not to exceed ten years. Ehler successfully moved for reconsideration of his prison sentence, receiving a suspended sentence and three years probation. He did not file a direct appeal.

### B.       Postconviction Proceedings

In September 2017, Ehler applied for postconviction relief. His application highlighted defense counsel's inefficacy in advising Ehler about "the strength of the speedy trial defense, and of the likelihood of prevailing on that defense on appeal." Ehler contended counsel's poor performance rendered his guilty plea involuntary and unintelligent. Ehler believed counsel reached a misguided conclusion that case law interpreting other subsections of rule 2.33 did not apply to the one-year deadline.[3] According to Ehler's application, that misapprehension

---

[3] Ehler offered evidence to emphasize trial counsel's scanty legal research on the speedy-trial issue. Postconviction counsel asserted the *Miller* and *Herrmann* cases counsel cited in the motion to dismiss "came up under the Lexis[]Nexis search query for 'Trial within one year.'" But we note the exhibit offered by postconviction counsel included the unpublished case involving Ravin Miller, *State v. Miller*, No. 12-1168, 2014 WL 1512531, at *6 (Iowa

had a cascading effect. It led to (1) counsel's deficient advocacy, (2) the district court's denial of his motion to dismiss, (3) the supreme court's denial of his application for discretionary review, and finally (4) counsel's ultimate recommendation that Ehler plead guilty.

Drilling deeper, Ehler maintained defense counsel missed the mark by not citing *Campbell* for this interpretation of the speedy trial rule:

> The decisive inquiry in these matters should be whether events that impeded the progress of the case and were attributable to the defendant or to some other good cause for delay served as a matter of practical necessity to move the trial date beyond the initial ninety-day period required by the rule.

714 N.W.2d at 628.

The postconviction court denied Ehler's application. Ehler appeals.

## II.  Scope and Standards of Review

We generally review postconviction proceedings for correction of legal error. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). But when the underlying claim to relief stems from a constitutional violation, such as ineffective assistance of counsel, we review de novo. *Id.*

Another layer down, if Ehler's motion to dismiss for a speedy trial violation had come to us on direct appeal, our review would have been for an abuse of discretion. *See Ennenga*, 812 N.W.2d at 707. But "that discretion is a narrow one, as it relates to circumstances that provide good cause for delay of the trial." *Id.* (quoting *Campbell,* 714 N.W.2d at 627). Here, because our review is de novo, we

---

Ct. App. Apr. 16, 2014) (addressing a one-year speedy trial issue). Meanwhile, trial counsel's motion to dismiss cited the published case involving Oliver Miller, *State v. Miller*, 637 N.W.2d 201, 204 (Iowa 2001) (addressing a ninety-day speedy trial issue).

will independently determine whether the State had good cause for the delay in bringing Ehler to trial.  *See id.*

## III.    Analysis

To show plea counsel was ineffective, Ehler's burden is twofold: first, he must prove counsel failed to perform an essential duty, and second, he must show that failure caused prejudice.  *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  We measure defense counsel's performance "against the standard of a reasonably competent practitioner with the presumption that the attorney performed his duties in a competent manner."  *Id.* (quoting State v. Dalton, 674 N.W.2d 111, 119 (Iowa 2004)).  The test for prejudice is whether but for counsel's errors, Ehler would not have pleaded guilty but would have insisted on going to trial.  *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### A. Did counsel breach an essential duty?

Ehler alleges his plea counsel was remiss in two ways: (1) by his failure to adequately research and argue the law in his motion to dismiss in the district court and in the application for discretionary review; and (2) by his failure to adequately advise Ehler of the applicable legal authority supporting his speedy trial defense when he advised Ehler to enter his guilty plea.

Responding to these allegations, the State agrees Ehler preserved error on the second claim—that counsel offered faulty advice on the guilty plea.  But, citing *State v. Carroll*, 767 N.W.2d 638, 641–42 (Iowa 2009), the State contends Ehler's guilty plea "waived" the first claim because any shortcoming in counsel's research and advocacy on the motion to dismiss was "not intrinsic to the plea."

In reply, Ehler cedes the "real question" is how counsel performed at the time of the plea. But he contends counsel's incompetence in preparing the motion to dismiss is "persuasive evidence" of his failure to understand the legal principles motivating his recommendation Ehler take the plea offer because he could "easily lose" on appeal. Ehler's nuanced reply echoes the holding in *Tollett v. Henderson*, 411 U.S. 258, 267 (1973): "while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds" for relief.

The bottom line is Ehler may "challenge the validity of his guilty plea by proving the advice he received from counsel in connection with the plea was not within the range of competence demanded of attorneys in criminal cases." *See Carroll*, 767 N.W.2d at 642 (quoting *Tollett*, 411 U.S. at 265–67) (reciting standard of proof from *McMann v. Richardson*, 397 U.S. 759, 770–71 (1970)). "Counsel's failure to evaluate properly facts giving rise to a constitutional claim or his failure to properly inform himself of facts that would have shown the existence of a constitutional claim, might in particular fact situations meet this standard of proof." *Tollett*, 411 U.S. at 266–67.

Considering that passage from *Tollett*, we disagree with the State's contention Ehler's guilty plea "waived" an ineffectiveness claim stemming from counsel's handling of the speedy-trial issue. In *Carroll*, our supreme court reiterated "there are no such categories of breach of duty resulting in prejudice that cannot, as a matter of law, survive a guilty plea." 767 N.W.2d at 644. "Only through a case-by-case analysis will a court be able to determine whether counsel

in a particular case breached a duty in advance of a guilty plea, and whether any such breach rendered the defendant's plea unintelligent or involuntary." *Id.*

Even more on point are *Utter* and *Ennenga*. In both cases, the State violated rule 2.33(2). And in both cases, the defendants pleaded guilty anyway. On direct appeal, Utter claimed "trial counsel's failure to file a motion to dismiss caused her to improvidently plead guilty to a charge that the State would have otherwise been barred from pursuing had her counsel performed effectively." *Utter*, 803 N.W.2d at 652. Our supreme court agreed. *Id.* The court reasoned: "to provide reasonably competent representation when a criminal defendant asserts his or her speedy trial rights, counsel must ensure that the State abides by the time restrictions established in Iowa Rule of Criminal Procedure 2.33." *Id.* The court held: "Utter's trial counsel failed to perform an essential duty by failing to file a motion to dismiss based on the State's violation of the speedy indictment rule and, thereafter, permitting Utter to plead guilty after the speedy indictment time expired." *Id.*

Similarly, in *Ennenga*, the court found counsel was ineffective for failing to protect the defendant's right to a speedy indictment. 812 N.W.2d at 708. In that case, the State argued reasonably competent counsel had no duty to "double check" if the clerk of court file stamped a trial information, when the State provided the signed charging document to the defense. *See id.* at 702 n.5. But the *Ennenga* majority rejected the State's narrow framing of the issue. The majority noted, "The reason counsel failed to ensure the State followed rule 2.33 was not relevant in *Utter* and is not relevant here." *Id.* The dissent decried the majority's reading of

*Utter* as creating an "absolute duty" to make certain the State honored the speedy trial rights of the accused. *Id.* at 711 (Mansfield, J., dissenting).

Like Utter and Ennenga, Ehler claims counsel failed to ensure the State followed rule 2.33. In holding with those cases, the reason for counsel's failure is not relevant. An under-researched and unconvincing motion to dismiss falls into the same bucket as no motion at all. For that reason, we will address in tandem the two breaches of duty Ehler attributes to counsel.

*1. Did counsel perform inadequate research and advocacy?*

Our examination of defense counsel's performance starts with his efforts to dismiss the charges under rule 2.33(3)(c). That rule requires all criminal cases to be brought to trial within one year after the defendant's initial arraignment "unless an extension is granted by the court, upon a showing of good cause."[4] Iowa R. Crim. P. 2.33(3)(c). Missing the deadline without good cause leads to an "absolute dismissal" of the prosecution—a discharge with prejudice. *State v. Taylor*, 881 N.W.2d 72, 78 (Iowa 2016) (quoting *Ennenga*, 812 N.W.2d at 701).

Defense counsel recognized the grounds to dismiss after the one-year anniversary of Ehler's arraignment came and went without the State bringing him to trial. His motion detailed the progression of the case—complete with supporting documentation. In support of dismissal, he cited the pertinent rule and two cases— *Miller*, 637 N.W.2d 201, and *Herrmann*, 2007 WL 3376881. And based on those cases, counsel set out the basic test for deciding whether dismissal is required.

---

[4] This rule implements the speedy trial rights guaranteed by article I, section 10 of the Iowa Constitution and the Sixth Amendment of the United States Constitution. *State v. Olson*, 528 N.W.2d 651, 653 (Iowa Ct. App. 1995).

What counsel didn't do and, in Ehler's estimation, should have done was "locate, read, cite [and] argue *. . . Campbell*, 714 N.W.2d [at 628,] or any of the many cases subsequent to *Campbell*, which cited *Campbell* as persuasive authority on the speedy trial issue."[5]  In this appeal, Ehler acknowledges *Miller* is "generally good law."  But he believes some statements in *Miller* are misleading and not in line with *Campbell* and its progeny.  In particular, Ehler objects to *Miller*'s emphasis on "delay attributable to the defendant."  *See* 637 N.W.2d at 204.  As Ehler emphasizes on appeal: "It was, indeed, this point that ultimately persuaded the trial court to deny the motion to dismiss."

Ehler criticizes his trial counsel for limiting his legal research to one-year speedy-trial violations to the exclusion of analogous case law addressing the other deadlines in rule 2.33(2).[6]  Indeed, the speedy-trial rule imposes three "outer limits" for prosecutors.  Iowa R. Crim. P. 2.33(2) (proclaiming "public policy of the state of Iowa" requires "criminal prosecutions be concluded at the earliest possible time consistent with a fair trial to both parties").  Subsection (a) requires the State to bring an indictment within forty-five days of arrest; subsection (b) requires the State to bring a defendant to trial within ninety days of indictment; subsection (c) requires the State to bring a defendant to trial within one year of arraignment.  *Id.* (including a good-cause exception for each time limit).

---

[5] By our count, twenty-nine Iowa appellate decisions cite *Campbell* for its discussion of "good cause" to excuse the State's failure to meet the deadlines in rule 2.33(2).

[6] As noted in footnote 3, the *Miller* case cited by counsel in the motion to dismiss involved a ninety-day speedy trial issue.  637 N.W.2d at 204.  But at the postconviction hearing, trial counsel—in answering a question from the county attorney—testified there would be no reason to cite "a 90-day case in a one-year matter."

To the extent counsel limited his research to one-year speedy trial cases, he was wrong to operate in that silo. The legislature intended uniform application of the good-cause standard across those three subsections. *State v. Miller*, 311 N.W.2d 81, 83 (Iowa 1981). Our precedents do not discriminate when interpreting what is good cause to miss any of the three deadlines. *See, e.g.*, *State v. Petersen*, 288 N.W.2d 332, 335 (Iowa 1980) (addressing ninety-day speedy trial issue in speedy-indictment case); *State v. Rodriguez*, 511 N.W.2d 382, 383 (Iowa 1994) (citing *Petersen* in one-year speedy trial case); *State v. Elder*, 868 N.W.2d 448, 453 (Iowa Ct. App. 2015) (citing *Campbell* in one-year speedy trial case).

But the postconviction court believed trial counsel "appropriately raised the delay issue" despite failing to cite *Campbell* in the motion to dismiss. It found *Campbell* did not "deviate substantially" from counsel's argument about delay attributable to the defendant or other "good cause" for the State to miss the one-year deadline. In defending the denial of postconviction relief, the State argues a citation to *Campbell* "would not necessarily have changed the ruling." The State asserts *Campbell's* holding "dealt with how to count days" and the postconviction order "had nothing to do with counting days."

While we view the State's characterization of *Campbell* as too narrow, we do not hold trial counsel breached a duty by failing to cite one particular case. In reality, counsel's motion to dismiss was more comprehensive than many trial court motions we see on appeal. *Campbell* did not overturn previous interpretations of the speedy-trial rules. Instead, it offered a new focus on "whether the events that impeded the progress of the case and were attributable to the defendant or to some other good cause for delay *served as a matter of practical necessity to move*

*the trial date*" beyond the 2.33(2) deadline. *Campbell*, 714 N.W.2d at 628 (emphasis added). The Iowa Practice Series pinpoints the case's significance:

> In his opinion on further review of the Iowa Court of Appeals, Justice Carter took the lower court to task for specifically quantifying the amount of delay attributable to each of the defendant's actions. It is not that mechanical, he explained. The question is simply whether the defendant impeded the progress of his or her trial.

4A B. John Burns, *Iowa Practice Series: Criminal Procedure* § 7:3, at 95 n.56 (2019 ed.) (citing *Campbell*, 714 N.W.2d at 628). Counsel did not argue to the district court that Ehler's actions could not have practically impeded the progress of his trial when the State took no action to bring Ehler to trial in all of June and July plus half of August 2014.

To his credit, counsel believed the district court wrongly denied the motion to dismiss. But he cited no case law to convince the supreme court to take the case before final judgment. Trial counsel testified he was "disappointed" when the supreme court didn't take discretionary review. And, as a result, his optimism in the speedy-trial defense faded.[7]

By disregarding the point stressed by Justice Carter in *Campbell*, counsel failed to persuasively present his argument for dismissal. A persuasive presentation would have underscored the State's burden to prove delays attributable to the defendant or other good cause operated as *a matter of practical*

---

[7] Counsel may have read too much into the supreme court's denial. "Such denial was not an approval of the ruling but merely a refusal, upon considerations [it] deemed sufficient, to review it in advance of final judgment." *Correll v. Goodfellow*, 125 N.W.2d 745, 748 (Iowa 1964); *accord Deere Mfg. Co. v. Zeiner*, 79 N.W.2d 403, 403 (Iowa 1956) ("Our refusal to grant an appeal from these interlocutory rulings in advance of final judgment was not an affirmance of the rulings. It was merely a refusal, upon considerations we deemed sufficient, to review the rulings in advance of final judgment. Had we granted the appeal of course we might have affirmed the rulings or reversed them. Then and not until then would there have been an adjudication as to their correctness.").

*necessity* to move the trial beyond the deadline. *Campbell*, 714 N.W.2d at 628; *see also State v. Winters*, 690 N.W.2d 903, 909 (Iowa 2005) ("Our approach to good cause reveals that the determination of whether pretrial motions and pretrial discovery can excuse a failure to comply with the speedy-trial rule essentially rests on the strength of the underlying reasons for the delay in disposing of the motions or completing the discovery, not the mere existence of the motions or request for discovery."). Counsel squandered his opportunity to convince the district court or the supreme court that his client should not have to face trial more than one year after arraignment. While we do not find counsel's research and advocacy to be a separate breach of duty, we do view that performance as having influenced counsel's advice to Ehler to accept the plea.

*2. Did counsel offer flawed plea advice?*

After the district court denied the motion to dismiss, counsel told Ehler the speedy-trial issue "looked like a loser on appeal." Given that gloomy assessment of Ehler's chances for reversal, counsel recommended his client take the plea offer. As the "quid pro quo," Ehler agreed to give up the right to appeal the speedy-trial issue, according to trial counsel's postconviction testimony.[8]

Focusing on that plea deal, Ehler argues counsel was ineffective for failing to "understand the law and explain it to his client in advance of his client's guilty plea." Ehler contends counsel's plea advice "breached a clear duty."

To counter Ehler's argument, the State contends counsel's advice was "merely a suggestion, not a directive to plead guilty." The State elaborates: "[trial

---

[8] Despite trial counsel's characterization, forfeiture of the right to appeal was not an express condition of the written plea agreement included in the postconviction record.

counsel] did not guarantee Ehler would lose on appeal, saying only that Ehler could easily lose." The State asserts counsel "left the decision squarely with Ehler." The State cites cases from other jurisdictions explaining counsel's mistaken prediction seldom constitutes a breach of duty. *See, e.g.*, *United States v. Marceleno*, 819 F.3d 1267, 1271–72, 1276 (10th Cir. 2016); *Anderson v. United States*, 334 F. App'x 8, 10–11 (7th Cir. 2009) (quoting *Julian v. Bartley*, 495 F.3d 487, 495 (7th Cir. 2007)); *Yonga v. State*, 108 A.3d 448, 465 (Md. Ct. Spec. App. 2015).

No question, counsel's misevaluation of the strength of the State's case will not always invalidate a guilty plea. *See Yonga*, 108 A.3d at 465 ("A mistaken guess about the admissibility of a confession will not invalidate a guilty plea."). But by the same token, counsel cannot evade responsibility for bad advice simply by hedging. As the Seventh Circuit aptly summarized in *Julian v. Bartley*:

> [O]ne would be hard pressed to find a lawyer who guaranteed a client anything. Guarantees in the law are hard to come by, particularly in the topsy-turvy world of sentencing. Were we to constrain claims for ineffective assistance of counsel only to those who received guarantees from their lawyers, we surely would eviscerate the law regarding the right to effective counsel.

495 F.3d at 495–96 (reiterating test for counsel's performance as "whether the legal advice was that of a reasonably competent attorney").

It is true counsel would be unwise to guarantee a particular outcome. But if counsel had examined and understood the reasoning in *Campbell*, he would not have predicted Ehler would lose the speedy-trial issue on appeal.[9] *See, e.g.*,

---

[9] The State suggests we cannot assume an appellate court would have correctly applied the law when presented with controlling authority. The State contends:
> [A]n appellate court *might* have relied on *Campbell*'s "matter of practical necessity" language to overturn the district court's denial of the motion to dismiss. 714 N.W.2d at 628. But an appellate court *might* instead have agreed with the district court that Ehler could not acquiesce in the delay

*Elder*, 868 N.W.2d at 455 (reversing district court's denial of motion to dismiss when "last continuance sought by Elder continued trial to September 24, 2013, with six weeks remaining available thereafter in which to bring the case to trial"). Counsel's failure to provide well-informed advice about the chances of success on appeal breached an essential duty. That breach rendered Ehler's plea involuntary.

### B. Did counsel's breach prejudice Ehler?

Satisfied that Ehler proved counsel breached an essential duty, we turn to prejudice. That prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. Stated another way, Ehler must show but for counsel's mishandling of the speedy-trial issue, he would not have accepted the plea offer and would have insisted on going to trial to preserve his appellate rights. *See id.* (explaining when plea counsel gives deficient advice about the viability of a defense, the prejudice inquiry depends largely on whether the defense would have succeeded, leading a rational defendant to insist on going to trial). A defendant cannot meet the prejudice standard with only a "conclusory claim" of willingness to stand trial. *State v. Myers*, 653 N.W.2d 574, 579 (Iowa 2002).

Ehler has more than a conclusory claim that he would have insisted on going to trial if properly advised by counsel that he could win the speedy-trial issue.

---

then benefit from his dilatory conduct. *See State v. Miller*, 311 N.W.2d 81, 83–84 (Iowa 1981); *State v. Ruiz*, 496 N.W.2d 789, 792 (Iowa Ct. App. 1992). Or an appellate court *might* have deferred to the district court's fact findings in applying the abuse-of-discretion standard. *See Campbell*, 714 N.W.2d at 627.

We will address this contention in our prejudice analysis.

As Ehler points out, he was willing to turn down an earlier, even more favorable, plea agreement the State dangled after the one year expired and before trial counsel moved to dismiss. And Ehler testified at the postconviction hearing he would have refused the State's new offer after losing the motion to dismiss had counsel properly evaluated the viability of his appeal.

On the other side, the State highlights the risks Ehler avoided by pleading guilty—prolonged incarceration, emotional consequences, and possible loss on appeal. The State maintains—even if counsel had advised Ehler he was likely to win on appeal—Ehler did not show he would have opted to face trial and a potential thirty years in prison to appeal an issue he had just lost in the district court. The State clings to the notion that the appellate court, properly briefed, might have reversed the district court but might not have.

We need not entertain such hypotheticals. The prejudice standard presumes judges act "according to the law." *Strickland*, 466 U.S. at 694. "The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Id.* at 695. Viewed objectively, Ehler had a winning speedy-trial claim. The State does not argue otherwise in this appeal.

We find Ehler would not have agreed to plead guilty if he had known the appellate court would be required to reverse the district court's ruling on the motion to dismiss under rule 2.33(2)(c). *See Ennenga*, 812 N.W.2d at 708–09. For that reason, his plea was not voluntary or intelligent. *Id.* And thus a "reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Utter*, 803 N.W.2d at 655)

(noting dismissal under rule 2.33 would create an absolute bar to further prosecution for these offenses).

## C. Is dismissal the appropriate remedy?

Ehler asks us for direct dismissal of his charges under rule 2.33(2)(c). By contrast, the State argues the appropriate remedy is to set aside the plea and remand for Ehler to either plead anew or go to trial.[10]

The State's remedy proposal hinges on its misdirected preservation argument. As we explained above, we see no reason to deviate from the ineffective-assistance analysis in *Utter* and *Ennenga*. "A dismissal under rule 2.33 would create an absolute bar to further prosecution for these offenses." *See Ennenga*, 812 N.W.2d at 708 (quoting *Utter*, 803 N.W.2d at 654).

---

[10] To show this remedy is appropriate, the State cites three cases where the appellate court remanded without dismissing. But none of those cases concern ineffective advice on a matter that, if counsel were effective, would lead to dismissal. *See Stovall v. State*, 340 N.W.2d 265, 267 (Iowa 1983) (vacating plea where counsel and court were mistaken about parole eligibility); *Meier v. State*, 337 N.W.2d 204, 207 (Iowa 1983) (finding counsel ineffective for misinforming defendant of sentencing consequences); *State v. Ali*, No. 16-0378, 2017 WL 936112, at *3 (Iowa Ct. App. Mar. 8, 2017) (finding counsel ineffective for providing inaccurate advice on immigration consequences).

And we are unconvinced by the State's policy argument that if we dismiss, "Ehler will reap a considerable windfall." Ehler was entitled to effective assistance of counsel. And had he received effective assistance, the court would have dismissed the charges. *See Ennenga*, 812 N.W.2d at 708. We perceive no windfall by placing Ehler in the position he would have been absent counsel's breach. *See Windfall*, *Webster's Third New International Dictionary* 2620 (2d ed. 2002) ("An unexpected, unearned, or sudden gain or advantage."); *see also Commonwealth v. Barbour*, 189 A.3d 944, 959 (Pa. 2018) ("[T]he Commonwealth suggests that Barbour seeks to profit from his wrongdoing, and that to afford him relief would be to grant him a windfall, it overlooks a countervailing consideration. The Commonwealth also may not benefit from its own fault, and the dereliction of its duty to provide a speedy trial may not be excused.").

We remand the case to the district court with instructions to grant Ehler's postconviction-relief application, vacate the guilty plea, and dismiss the trial information under rule 2.33(2)(c).

**REVERSED AND REMANDED.**