# IN THE COURT OF APPEALS OF IOWA

No. 21-1676
Filed May 10, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**NELSON CARLOS FLORES,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Crawford County, Zachary Hindman,

Judge.

        Nelson Flores appeals his convictions for crimes relating to sexual abuse of

a child.  **AFFIRMED.**

        Tyler D. McIntosh and Christopher J. Roth of Roth Weinstein, LLC, Omaha,

Nebraska, for appellant.

        Brenna Bird, Attorney General, and Benjamin Parrott, Assistant Attorney

General, for appellee.

        Heard by Vaitheswaran, P.J., Badding, J., and Doyle, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**VAITHESWARAN, Presiding Judge.**

A jury found Nelson Flores guilty of several crimes relating to sexual abuse of a child.  On appeal, Flores challenges (I) a claimed violation of his speedy trial right; (II) the sufficiency of the evidence supporting the jury's findings of guilt; (III) the admission of a recorded interview of the child; (IV) the admission of co-conspirator statements concerning a plan to leave the state; (V) the denial of his motion for new trial; and (VI) his attorney's performance.

I.    *Speedy Trial*

Iowa Rule of Civil Procedure 2.33(2)(b) states: "If a defendant indicted for a public offense has not waived the defendant's right to a speedy trial the defendant must be brought to trial within 90 days after indictment is found or the court must order the indictment to be dismissed unless good cause to the contrary be shown."

The State charged Flores with crimes in two separate cases.  The trial information in the first case was filed on July 14, 2016.  Two-and-a-half weeks later, Flores waived his ninety-day speedy trial right.  The trial information in the second case was filed on April 12, 2021.  Flores demanded his right to a speedy trial in the second case.  Both cases were consolidated for trial.  The State moved to postpone the trial date beyond the speedy trial deadline, citing the need to obtain Flores' release from federal custody.  The district court granted the motion.  Trial was held after the deadline.

Flores acknowledges he waived his speedy-trial right in the first case but argues his demand in the second case and the consolidation of both cases militate in favor of finding a violation.  He also asserts the waiver in the first case was invalid because there was no evidence that it "was explained to [him] in his native

language." Finally, Flores contends the State could have sought his release from federal custody at an earlier date, undermining its claim of good cause for the violation.

Our review of a claimed denial of a speedy trial right is for corrections of errors of law. *See State v. Abrahamson*, 746 N.W.2d 270, 273 (Iowa 2008) *(*citing *State v. Miller*, 637 N.W.2d 201, 204 (Iowa 2001)). We review a good cause determination for an abuse of discretion. *State v. Watson*, 970 N.W.2d 302, 307 (Iowa 2022).

There was no speedy trial violation in the first case. First, Flores waived his right. Second, the document containing his waiver stated Flores could "read and understand the English language with the help of an interpreter," leading to an inference that he had an interpreter. Third, Flores' attorney could have waived the right for him. *See State v. LeFlore*, 308 N.W.2d 39, 41 (Iowa 1981) (stating "the statutory right to a speedy trial under [the former version of rule 2.33(2)(b)] is not a personal right that can be waived only by the defendant" and "[d]efense counsel acting within the scope of his or her authority may waive this right on the defendant's behalf without the defendant's express consent"). Fourth, Flores essentially reaffirmed his waiver by seeking sixteen postponements of trial in the first case. Finally, the first case was not consolidated with the second case until after Flores demanded speedy trial in the second.

We turn to whether the State established good cause for seeking a delay of the consolidated trial. In granting the State's motion, the district court cited Flores' potential unavailability, twelve pending motions in the case, and the court's need to preside over another jury trial with a speedy trial deadline. On appeal, the State

points to Flores' own request to postpone trial due his attorney's planned vacation. The State also notes that its request for a seven-day postponement was based in part on "the relatively rare occurrence" of having to file a petition for writ of habeas corpus to obtain Flores' release from federal custody.

"The decisive inquiry in these matters" is "whether events that impeded the progress of the case and were attributable to the defendant or to some other good cause for delay served as a matter of practical necessity to move the trial date beyond the initial ninety-day period required by the rule." *State v. Campbell*, 714 N.W.2d 622, 628 (Iowa 2006). Although the State acknowledges it "could have perhaps requested custody [of Flores] earlier," whether and when Flores would be released was entirely up to the federal government. As the prosecutor stated at a hearing on the State's motion, "unless and until . . . the feds release [Flores] to [the State] . . . we can't get him here." The prosecutor also pointed to "a number of unplanned roadblocks" associated with witness depositions. Again, those depositions could have been taken earlier, but logistical issues resulted in delays. Flores' attorney conceded as much, stating "[t]he State has—has set forth I guess accurately as far as the problems that we're running into." Finally, both sides filed numerous pretrial motions in the weeks before and after the good cause motion was filed. It is true "the mere existence of the motions or the request for discovery" may not excuse a failure to comply with the speedy-trial rule. *See State v. Winters*, 696 N.W.2d 903, 909 (Iowa 2006). At the same time, "the time required for the court to rule on motions filed by a defendant can amount to delay attributable to the defendant and constitute good cause for the failure to comply with the speedy trial deadline." *Id.* at 908. In the same vein, "good cause for pretrial delay under

the speedy-trial rule can result from the need to complete pretrial discovery." *Id.* at 909.

We conclude a confluence of circumstances, some outside the State's control, caused the delay in bringing Flores to trial within the ninety-day speedy trial deadline. We discern no abuse of discretion in the district court's decision to grant a short continuance to facilitate resolution of pretrial matters and Flores' presence at trial.

## II.    *Sufficiency of the Evidence*

The jury found Flores guilty of one count of second-degree sexual abuse, one count of lascivious acts with a child, one count of assault with intent to commit sexual abuse, three counts of third-degree sexual abuse, one count of conspiracy to commit a felony (suborning perjury), one count of conspiracy to commit an aggravated misdemeanor (obstruction of prosecution), one count of lascivious conduct with a minor, one count of tampering with a witness (threatening the child believing the child "had been or may be summoned as a witness in a judicial proceeding"), and one count of dissemination and exhibition of obscene materials to a minor.[1]  Flores asserts "there was insufficient evidence to convict [him] of any of the charges."  In his view, "the State's entire case was based upon the credibility of one witness."

That witness, a child who was sixteen years old at the time of trial, testified that Flores sexually abused her from the ages of nine to fifteen.  She provided a detailed, anatomically-specific description of multiple sex acts.  She said that

---

[1] The jury also found Flores guilty of three counts of violating a no-contact order. The jury found Flores not guilty of two counts of extortion.

Flores also touched her inappropriately "[w]henever [her] mom would turn around or leave to use the rest room." And he showed her pornography on his phone.

The child recounted Flores' efforts to have her remain silent about the abuse. While he was sexually assaulting her, he told her, "Don't tell your mom," and "you're going to get in trouble if you tell somebody that I did this to you." When he learned she intended to report details to authorities, he said, "Don't tell them what I did." Notwithstanding Flores' orders, the child disclosed the abuse to health professionals and law enforcement authorities. She was later interviewed by child protective personnel.

Flores pressured her to take back her statements. He threatened her with having "to go to foster care," where people would hurt her and she would never "see the family again." He told her he knew a cop, a disclosure that made her feel "[a]nxious" because she thought she "might get in trouble."

The child's mother was present when Flores made some of these comments. She and the child's grandmother supported Flores. According to the child, the mother's response was, "this all depends on you. Whatever you say could affect us majorly." They would "[o]ften" tell her "that it's all made up, everything that you're saying is just a dream." Their comments made her feel "[n]ervous, scared" and "regretful." She "feared that something would happen to [her] mom or [her] grandma" and "something bad was going to happen if [she] didn't say what they wanted [her] to say."

The child recanted statements she made during an initial interview with a child abuse professional. She testified to doing so "because [she] was being

pressured." Flores continued to sexually abuse her following her disclosures and following entry of a no-contact order.

Flores and the child's mother crafted a plan to abscond with the child. When the child was fifteen, Flores told her he would take her "[s]omewhere far away." They would say, "Let's just go somewhere where we could be a family again, where we wouldn't have court."

The child's testimony, together with other evidence, amounted to substantial evidence in support of the findings of guilt. *See State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (citation omitted). The assessment of her credibility was within the jury's purview. *See State v. Mathis*, 971 N.W.2d 514, 519 (Iowa 2022) (stating in considering a challenge to the sufficiency of the evidence supporting a jury verdict, "it is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." (quoting *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006))).

### III.    *Forensic Interview*

The State filed a motion to admit recorded forensic interviews of the child under the residual exception to the hearsay rule. *See* Iowa R. Evid. 5.807. The district court initially granted the motion, reasoning that "the issue of credibility [was] so inherently questioned by the witness's change in testimony" that the recording was "necessary" within the meaning of that exception. The court also found the interview was "essentially . . . a prior consistent statement necessary to rebut any claim of newly fabricated evidence."

Notwithstanding the ruling, Flores filed a motion in limine to exclude the recordings. The trial judge concluded the earlier ruling was "not necessarily final." The court stated (1) the recorded interviews, "if offered for the truth of the statements made during those interviews, plainly constitute[d] hearsay"; (2) the State failed to proffer "any reason why the alleged victim [was] unable to testify"; and, indeed, expressed an intent "to present" her testimony at trial; (3) the "in-person testimony would be more probative on any relevant issue than would be the recorded interviews, and (4) the availability of such testimony mean[t] that the admission of the recorded interviews [was] not necessary." The court further concluded that the child's "prior recantation and un-recantation did not change the necessity analysis. The court reasoned that the recordings would simply "bolster the credibility of the alleged victim's testimony on these matters, which is not an exception to the hearsay rule." Although finding the recordings inadmissible "under the residual hearsay exception," the court deferred ruling on whether the recordings would be admissible to rebut a recent fabrication under Iowa Rule of Evidence 5.801(d)(1)(B).

The defense raised the issue again at the beginning of trial. The court again deferred ruling on the issue. Later, the court informed the parties that the court would focus on whether the recordings were admissible under the rule of completeness set forth in rule 5.106, if the defense used portions of the child's recorded statements to impeach Flores. The court stated he would "have to wait to see what the cross-examination show[ed]" before ruling on the issues.

The State called the child to the stand. The State raised the child's initial recorded interview on direct examination. The prosecutor asked her about the

nature of the conversations, whether Flores tried to influence her statement, and whether she was truthful with the interviewer. On cross-examination, Flores' attorney pointed out inconsistencies between her prior statements and her trial testimony. At the conclusion of her testimony, the district court ruled the recordings would not be admissible "as substantive evidence" under rule 5.801(d)(1)(B). The court further ruled the 2016 recordings would be admissible under rule 5.106 "only for purposes of assessing the witness's credibility" and the jury would be so instructed.

Flores takes issue with the court's ruling. He notes that he did not delve into minutiae contained in the prior recordings and "the State essentially goaded the [d]efense into cross-examining [the child] regarding the tape."

Iowa Rule of Evidence 5.106 states:

> (a) If a party introduces all or part of an act, declaration, conversation, writing, or recorded statement, an adverse party may require the introduction, at that time, of any other part or any other act, declaration, conversation, writing, or recorded statement that in fairness ought to be considered at the same time.
> (b) Upon an adverse party's request, the court may require the offering party to introduce at the same time with all or part of the act, declaration, conversation, writing, or recorded statement, any other part or any other act, declaration, conversation, writing, or recorded statement that is admissible under rule 5.106(a). Rule 5.106(b), however, does not limit the right of any party to develop further on cross-examination or in the party's case in chief matters admissible under rule 5.106(a).

"Fundamentally, rule 5.106's purpose is to prevent a party—particularly the party that presents evidence first—from misleading juries with partial or incomplete evidence." *State v. Tucker*, 982 N.W.2d 645, 658 (Iowa 2022). "Our prior cases recognize an 'opening the door' principle of evidence." *State v. Parker*, 747 N.W.2d 196, 206 (Iowa 2008). "This rule . . . provides that 'one who induces a trial

court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of the opening.'" *Id.* (internal quotations and citation omitted).

As applied, "rule 5.106 allows a second litigant to introduce alongside supposedly partial or incomplete evidence some additional evidence "that in fairness ought to be considered at the same time." *Tucker*, 982 N.W.2d at 659 (internal quotations and citations omitted). For example, in *State v. Austin*, 585 N.W.2d 241, 243–44 (Iowa 1998), "[t]he criminal defendant—the first litigant—had used a summary of [a recorded child] interview . . . to cross-examine and impeach the victim" and "the state—the second litigant—successfully invoked rule 5.106 to demand the entire interview recording be admitted into evidence for the sake of fairness." *Id.* (summarizing *Austin*).

The posture was reversed here. The State presented the evidence first and the defense cross-examined without using or seeking the admission of the recordings. Because the State rather than the defense opened the door, we question its reliance on *Austin* for admission of the recordings. We elect to bypass that issue and proceed to a harmless-error analysis. *See Parker*, 747 N.W.2d at 209 ([E]rror in an evidentiary ruling that is harmless may not be a basis for relief on appeal.").

"The State overcomes the presumption of prejudice if it can establish that there was overwhelming evidence of the defendant's guilt." *State v. Montgomery*, 966 N.W.2d 641, 661 (Iowa 2021) (internal quotations and citation omitted). As noted, the child provided detailed trial testimony. Her testimony together with other

record evidence was overwhelming. Accordingly, any error in admitting the recordings was harmless.

## IV. Co-Conspirator Statements

Iowa Rule of Evidence 5.801(d)(2)(E) states statements made by a party's coconspirator "during and in furtherance of [a] conspiracy" and offered against the opposing party are not hearsay. The State expressed an intent to offer a witness who would testify that the child's mother conspired with Flores to leave the state with him and with her children. Flores objected. The district court ruled the testimony admissible.

The witness testified she had a conversation with the child's mother about taking the child away. The mother told the witness the only way she, Flores, and the children could be together so that Flores "wouldn't get in trouble was to leave the state and that they were planning on going to Tennessee with his family." The witness had four to five conversations with the mother on the topic.

Flores contends the mother's statements as recounted by the witness did not satisfy rule 5.801(d)(2)(E) because they were not "in furtherance of" the conspiracy. On this element, the Iowa Supreme Court has stated:

> It is not the purpose of the rule to exclude statements relating to the conspiracy uttered during the active [life] of the conspiracy under circumstances indicating reliability. The furtherance requirement is construed broadly with this in mind. A narrative declaration is in furtherance of the conspiracy if it has some connection with what is being done in promotion of the common design.

State v. Kidd, 239 N.W.2d 860, 864 (Iowa 1976) (citations omitted). "The principal question in the in furtherance issue is whether the statement promoted, or was intended to promote, the goals of the conspiracy." State v. Dayton, No. 10-1161,

2011 WL 4578505, at *5 (Iowa Ct. App. Oct. 11, 2011) (internal quotations and citation omitted). "When a declarant seeks to induce the listener to deal with the conspirators or in any other way to cooperate or assist in achieving the conspirators' common objective, the declaration may be admissible." *Id.* "Statements concerning activities of the conspiracy, including future plans, also may become admissible when made with such intent." *Id.*

The district court concluded the requirement was satisfied. The court provided the following reasoning:

> The statement itself and other evidence as well indicate that both [Flores] and [the mother] were members of this conspiracy and obviously the statements were made during the course of the conspiracy . . . [and] by a preponderance of the evidence that what we've got here, we've got circumstances where . . . any move by [the mother] and by [Flores] involving [the child] is going to have to involve [the testifying witness] in some way because essentially they're going to have to get the kid away from her or take her with—either without this witness's knowledge or with this witness's knowledge, so with that it seems to me like why would [the mother] be telling this witness that other than essentially to butter her up and get—get her to a point where this conspiracy can happen. So under the liberal in furtherance standard I think that has been satisfied.

The court reasonably concluded the statements were a last-ditch effort by the mother to have the child returned to her custody and to obstruct the prosecution of Flores. We discern no error in the court's ruling. *See State v. Tangie*, 616 N.W.2d 564, 568 (Iowa 2000) (setting forth standard of review).

## V. Motion for New Trial

Flores filed a motion for new trial, arguing in part, that the jury's findings of guilt were contrary to the evidence. The district court denied the motion, reasoning as follows:

The application of the legal standard that applies to these types of motions differs a little bit from the legal standard which applies to a motion for judgment of acquittal in that the Court, faced with a motion like this one, is drawn into the question of credibility. The weight of the evidence, as raised in a motion like this, refers to the trier of fact here, the jury's determination, that a greater amount of credible evidence support one side of an issue or cause over the other side.

And so a Court may grant the new trial where a verdict is contrary to the weight of the evidence. And, again, it's a much broader inquiry than what the Court conducts in relation to a motion for judgment of acquittal.

But that said, the standard is not necessarily an easy one, as is reflected in the case quoted by the State. And so again, this is a closer call in the Court's mind than the judgment of acquittal. As [defense counsel] has already pointed out today, as he pointed out many times at trial, there were some inconsistencies in the State's evidence which the defendant pointed out. Those inconsistencies obviously undermine the credibility of some of the State's evidence. But at the same time, the Court cannot say based on the evidence before it that what the jury did, the manner in which the jury elected to resolve those inconsistencies, is clearly against the weight of the credible evidence.

Flores again argues "the State's entire case rested upon the credibility of [the child]" and "[t]here was no corroborating evidence to support [the child's] story." "On a weight-of-the-evidence claim, appellate review is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *State v. Linderman*, 958 N.W.2d 211, 218 (Iowa Ct. App. 2021) (quoting *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003)). Suffice it to say we discern no abuse of discretion in the court's ruling.

## VI.	*Ineffective Assistance of Counsel*

Flores contends his trial attorney "was ineffective when he failed to object to witness vouching by the State's forensic interviewer." The court cannot address

his ineffective-assistance-of-counsel claim on appeal.  *See Tucker*, 982 N.W.2d at 652 (citing Iowa Code § 814.7 (2022)).

We affirm the jury's findings of guilt and the judgment and sentence.

**AFFIRMED.**